This is an appeal from the denial of four Rule 20, A.R.Crim.P.Temp., petitions consolidated for a hearing in the circuit court.
In 1981, in case CC-80-1466, the appellant was convicted of rape. At sentencing, the State introduced three prior felony convictions, and the appellant was sentenced as a habitual offender to life imprisonment without parole. The appellant appealed the rape conviction, and this Court affirmed without published opinion on October 27, 1981, 416 So.2d 1115. Rehearing was denied November 24, 1981. The Alabama Supreme Court denied a petition for writ of certiorari on January 22, 1982.
Subsequently, the appellant filed petitions for writ of error coram nobis and habeas corpus attacking the rape conviction. Both petitions were heard and denied, and the denials were affirmed on appeal to this Court. See Falkner v. State,462 So.2d 1040 (Ala.Cr.App. 1984) (coram nobis); Falkner v. State,497 So.2d 855 (Ala.Cr.App. 1986) (habeas corpus) (unpublished memorandum opinion), cert. denied, 514 So.2d 342 (Ala. 1987).
In March 1989, the appellant filed four petitions under Rule 20, A.R.Crim.P.Temp. (now Rule 32, A.R.Cr.P.), once again collaterally attacking his 1981 rape conviction, and, in addition, collaterally attacking (for the first time) each of the three underlying convictions which had been used to enhance his sentence for rape. See Lochli v. State, 565 So.2d 294, 296
(Ala.Cr.App. 1990) (validity of underlying prior convictions should be challenged by filing a separate Rule 20 petition attacking each underlying conviction). The appellant claims that those three underlying convictions were unavailable for enhancement purposes because they were based on an unconstitutional statute. Those underlying convictions are as follows: (1) On December 21, 1973, in case CC-73-28983, the appellant, then age 16, pleaded guilty to forgery. He was sentenced to imprisonment for a year and a *Page 41 
day and was placed on probation. His probation was later revoked and he served the sentence imposed. (2) On September 30, 1974, in case CC-74-30732, the then 16-year-old appellant pleaded guilty to buying, receiving, or concealing stolen property. He was sentenced to a year and a day. (3) On November 11, 1974, in case CC-74-30138, the appellant, then age 17, pleaded guilty to grand larceny and was sentenced to a year and a day. All three convictions occurred in Jefferson County.
The appellant maintains that these three underlying convictions denied him equal protection of the law on the basis of sex. In 1973 and 1974 when the convictions occurred, the applicable statute provided that in Jefferson County young male offenders were treated as adults at age 16, whereas young female offenders were given the benefit of juvenile adjudication and not treated as adults until age 18. The appellant argues that if males and females had been treated equally in Jefferson County in 1973 and 1974, he would have had three prior juvenile adjudications, which would not have been available to enhance the sentence for his 1981 crime, instead of three adult felony convictions, which increased the sentence for his 1981 offense to life imprisonment without parole. The appellant asks this Court to vacate his 1973 and 1974 convictions and to remand his 1981 rape conviction for proper sentencing.
The circuit court denied all four petitions. It ruled that the petition in case CC-80-1466 was successive and, therefore, procedurally barred. We agree that the petition in case CC-80-1466 (the third petition attacking the rape conviction) appears to be successive within the meaning of Rule 20.2(b). (1) It was the third petition collaterally attacking the appellant's rape conviction, and (2) in both of the two prior petitions there had been a hearing on the merits. SeeBlount v. State, 572 So.2d 498 (Ala.Cr.App. 1990). (3) Neither of the prior petitions alleged the ground raised in the third. Furthermore, the appellant's third, and current, petition did not show
 "both that good cause exist[ed] why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first [and second] petition[s] [were] heard, and that failure to entertain the petition [would] result in a miscarriage of justice."
Rule 20.2(b), A.R.Cr.P.Temp. (emphasis added).
Apparently, the circuit court denied the three remaining petitions on the following grounds: (1) that they were procedurally barred due to "an unreasonable and unexplained delay" in filing, citing Young v. State, 516 So.2d 858, 859
(Ala.Cr.App. 1987); (2) that the statute setting the age for juvenile treatment in Jefferson County was constitutional; and (3) that although "no evidence was presented nor any allegations made concerning ineffectiveness of counsel [at the 1973 and 1974 convictions]," the appellant "was represented by competent, effective counsel." We disagree with all three reasons.
(1) In denying the petitions, the circuit court stated: "The Court is further satisfied that the controlling case ofYoung v. State, 516 So.2d 858 (1987), applies in that the Petitioner/Defendant has not satisfactorily explained a delay from the time of the pleas of guilty to the time of filing of his Petition pursuant to Rule 20." While it is true that "an unreasonable and unexplained delay may, in itself, afford sufficient ground for the dismissal of the petition," Young v.State, 516 So.2d at 859; accord, Rahman v. State, 563 So.2d 50,52-53 (Ala.Cr.App. 1990), the appellant's delay was not argued by the State as a ground for dismissing the petition. The State argued that the petition should be dismissed because relief was precluded under Rule 20.2(a)(4), A.R.Crim.P.Temp., in that the matters were raised on appeal or in a previous collateral proceeding, under Rule 20.2(a)(5) in that the matters could have been but were not raised on appeal, and under Rule 20.2(b) in that the petitions were successive.
Rule 20.3 provides that "[t]he State shall have the burden of pleading any ground of preclusion." Under that rule, "the State is required to plead the ground or grounds of *Page 42 
preclusion that it believes apply to the petitioner's case, thereby giving the petitioner the notice he needs to attempt to formulate arguments and present evidence to 'disprove [the] existence [of those grounds] by a preponderance of the evidence.' " Ex parte Rice, 565 So.2d 606, 608 (Ala. 1990). In that case, the Alabama Supreme Court held that this was a right "inherent in our concept of due process to prisoners filing Rule 20 petitions." Id.
Furthermore, in its order denying the petitions, the circuit court made no finding that the delay had resulted in any prejudice to the State.
 "Lapse of time alone does not establish laches. Ellis v. Stickney, 253 Ala. 86, 42 So.2d 779
(1949). To be affected by laches, the delay should have been with notice of the existence of the right, resulting in disadvantage to another, or should have operated to bring about changes of conditions and circumstances of which there can no longer be a safe determination of the controversy. Merrill v. Merrill, 260 Ala. 408, 71 So.2d 44
(1954)."
Davis v. Thomaston, 420 So.2d 82, 84 (Ala. 1982). "The burden of showing the existence of circumstances, changed conditions, prejudice, or injustices amounting to laches, rests upon him who duly invokes the same, when not shown on the face of the bill from the facts averred." Blythe v. Enslen, 219 Ala. 638,643, 123 So. 71, 75 (1929). "Laches is not fixed by a hard and fast limit of time, but is a principle of good conscience dependent on the facts of each case." Woods v. Sanders,247 Ala. 492, 496, 25 So.2d 141, 144 (1946).
In addition, by not arguing laches as a basis of its motion to dismiss, the State has in effect waived that ground of preclusion. See Ex parte Williams, 571 So.2d 987, 989
(Ala. 1990) ("the failure of a party to object to a matter at trial precludes the party from raising that matter on appeal as error").
For each of these reasons, the circuit court erroneously relied on the ground of laches as a basis for denying the petitions.
(2) The circuit court erred in concluding that the statute setting the age for juvenile treatment in Jefferson County was constitutional. In 1973 and 1974, when the appellant's three underlying convictions occurred, a "delinquent child" was defined, in that county, as "any male child who while undersixteen years of age, or any female child who while undereighteen years of age, . . . violates any penal law. . . ." Title 62, § 311, Code of Alabama 1940 (Recomp. 1958) (emphasis added). The statewide law of general application was Title 13, § 350, Code of Alabama 1940 (Recomp. 1958), which provided that "[t]he words 'delinquent child' shall mean any child who while under sixteen years of age violates any penal law. . . ." While Title 62, § 311, established the authority of the Jefferson County juvenile court over male offenders under the age of 16 and female offenders under the age of 18, a related statute provided that a Jefferson County adult criminal court could, in its discretion, transfer a male offender between the ages of 16 and 18 to the jurisdiction of the juvenile court.[1]
It is evident that Title 62, § 311, treated similarly-situated young offenders differently solely on the basis of sex. Comparable statutes in other jurisdictions have uniformly been declared to be unconstitutional violations of the equal protection clause. See, e.g., Lamb v. Brown,456 F.2d 18, 20 (10th Cir. 1972) (Oklahoma statute defining juveniles as males under the age of 16 and females under the age of 18);People v. Ellis, 57 Ill.2d 127, 133, 311 N.E.2d 98, 101 *Page 43 
(1974) (Illinois statute treating 17-year-old males as adults and 17-year-old females as juveniles); Ex parte Matthews,488 S.W.2d 434, 438 (Tex.Cr.App. 1973) (Texas statute treating 17-year-old males as adults and 17-year-old females as juveniles), overruled as to the remedy imposed, Ex parteTrahan, 591 S.W.2d 837 (Tex.Cr.App. 1979). See also Harrigfeldv. District Court, 95 Idaho 540, 543, 511 P.2d 822, 825 (1973) (statute declaring the age of majority as 18 for females and 21 for males unconstitutional); In re B., 68 Misc.2d 95, 97-98,326 N.Y.S.2d 702, 705-06 (N.Y. Fam. Ct. 1971) (statute defining "persons in need of supervision" as males under the age of 16 and females under the age of 18 unconstitutional); Tang v.Ping, 209 N.W.2d 624, 628 (N.D. 1973) (statute declaring the age of majority as 18 for females and 21 for males unconstitutional); Flack v. Sizer, 322 S.E.2d 850, 853 (W. Va. 1984) (statute allowing males, but not females, in the 16- to 21-year-old age group to be treated as youthful offenders unconstitutional). See generally Craig v. Boren, 429 U.S. 190,97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (Oklahoma statute prohibiting the sale of 3.2% beer to males under the age of 21 and to females under the age of 18 violated equal protection clause); Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373,43 L.Ed.2d 688 (1975) (Utah parental support statute specifying the age of majority as 21 for males and 18 for females violated equal protection clause); Frontiero v. Richardson,411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (difference in definition of "dependent" of male armed services member and "dependent" of female armed services member violated equal protection clause); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251,30 L.Ed.2d 225 (1971) (Idaho statute providing that, when two individuals are otherwise equally entitled to appointment as administrator of an estate, the male applicant must be preferred to the female violated equal protection clause).
All of the foregoing provisions were held to violate the Equal Protection Clause because, like Title 62, § 311, they afforded dissimilar treatment to males and females similarly situated. We have no doubt that the Code provision defining 16-year-old males as adults for purposes of criminal prosecution in Jefferson County, while treating females of the same age as juveniles, is and was blatantly unconstitutional. By denying 16- and 17-year-old male offenders the benefits of juvenile adjudication available to 16 and 17-year-old female offenders, the statute violated the Equal Protection Clause.
(3) The appellant did not challenge the constitutionality of the statute at the time of his 1973 and 1974 convictions. He also did not appeal those convictions. Therefore, his only available avenue of collateral attack upon those convictions is the allegation that the attorneys who represented him at those convictions were ineffective for failing to raise the issue of the statute's unconstitutionality.
Contrary to the circuit court's statement in its order denying the petitions that "no evidence was presented nor any allegations made concerning ineffectiveness of counsel [at the 1973 and 1974 convictions]," the petitions clearly raised the matter of counsel's ineffectiveness. They alleged that
 "[p]etitioner was denied the effective assistance of counsel due to the fact that his attorney pleaded him guilty as an adult in the Jefferson County [Court of] Criminal Pleas, when in fact the Petitioner was sixteen years old and of juvenile age, and when said attorney took no action to attack the unconstitutionality of the court's jurisdiction and controlling statutes, as well as the fact that he never attempted to file a motion to have the court transfer his case to the juvenile courts [pursuant to Title 62, § 319]."
Furthermore, at the hearing on the petitions, the following occurred:
 "MR. JAFFE [counsel for the appellant]: What we haven't discussed is my second allegation that needs to be brought out for the record, and that is whether his lawyers should have attacked these underlying convictions from the beginning. . . . The issue is whether that lawyer, whoever those lawyers were, whether — one, whether that lawyer should *Page 44 
have attacked, I'll call them juvenile convictions, the convictions where my client was sixteen years old, that lawyer I believe should have done that, and we are alleging incompetency or ineffective assistance of counsel for that lawyer not doing that.
 "We are also alleging that the lawyer in each of the underlying convictions, and this is in our Rule 20 petitions, that that lawyer should have also attacked the unconstitutionality and the invalidity of the convictions. That is the original unconstitutional infirmity should have been attacked by each of the lawyers in this case, and therefore we have an allegation that each of those lawyers gave Milton Dale Falkner ineffective assistance as well. Naturally, we would be happy to subpoena those lawyers if — whoever they are, wherever they are, and I don't want to give that up by saying I have nothing else to present.
 "THE COURT: All right. I'll consider all that, and hopefully I'll get a ruling out by next week."
The issue was properly raised below. We must therefore determine whether the circuit court erred in finding that the appellant "was represented by competent, effective counsel" at the time of his three underlying convictions in cases numbered CC-73-28983, CC-74-30138, and CC-74-30732. The issue is whether counsel's performance in failing to challenge Title 62, § 311 on the ground that it denied the appellant equal protection was deficient, and if so, whether that deficient performance prejudiced the appellant. Strickland v. Washington,466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
We recognize that determining the competence of an attorney's representation some 16 years after the fact is like Monday-morning quarterbacking. In 1991, we have the benefit of a line of decisions by the United States Supreme Court and other judicial tribunals which have spelled out the parameters of the law prohibiting discrimination on the basis of sex. In addition, we recognize that the Habitual Felony Offender Act was not in existence in Alabama in 1973 and 1974 when the appellant received his three underlying convictions. Furthermore, we realize that
 "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."
Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065
(emphasis added). Nevertheless, we fail to see how any reasonably competent attorney could have been unaware, in 1973, of the obvious sex-based denial of equal protection presented by the statute at issue here.
Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225
(1971), decided two years before the appellant's first conviction at age 16, should have put a reasonably effective attorney on notice that a statutory provision which provided "dissimilar treatment for men and women who are . . . similarly situated . . . violates the Equal Protection Clause."404 U.S. at 77, 92 S.Ct. at 254.
Lamb v. Brown, 456 F.2d 18 (10th Cir. 1972), the leading case on the unconstitutionality of statutes which established a sex-based age differential for juveniles, was decided before the appellant's three convictions in 1973 and 1974. By 1973, courts in Idaho, New York, North Dakota, Oklahoma, and Texas had struck down similar statutes on equal protection grounds. In the 1976 case of Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451,50 L.Ed.2d 397, the United States Supreme Court outlined the history of Oklahoma's age-of-majority statutes:
 "Before 1972, Oklahoma defined the commencement of civil majority at age 18 for females and age 21 for males. In contrast, females were held criminally responsible as adults at age 18 and males at age 16. After the Court of Appeals for the Tenth Circuit held in 1972, on the authority of Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), that the age distinction was unconstitutional for purposes of establishing criminal responsibility *Page 45 
as adults, Lamb v. Brown, 456 F.2d 18, the Oklahoma legislature fixed age 18 as applicable to both males and females. In 1972, 18 also was established as the age of majority for males and females in civil matters, except that [sections] of the 3.2% beer statute were simultaneously codified to create an exception to the gender-free rule."
429 U.S. at 197, 97 S.Ct. at 457 (citations to Oklahoma statutes omitted). In his concurring opinion in that case, Justice Stevens observed that the age distinction for the purchase of 3.2% beer was a "mere remnant of the now almostuniversally rejected tradition of discriminating against malesin this age bracket." 429 U.S. at 212, 97 S.Ct. at 465
(Stevens, J., concurring) (emphasis added). Although Craig v.Boren was decided in 1976, the precedents it cited predated the appellant's convictions. More importantly, the fact that the observation could be made in 1976, that the practice of discriminating against young males was "now almost universally rejected," indicates that the availability of an equal protection challenge to statutes such as Title 62, § 311, was well known in legal circles long before 1976.
In fact, a challenge to the constitutionality of a statute on grounds of sex discrimination stood a better chance of success in 1973 than it did only a few years later. CompareFrontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764,36 L.Ed.2d 583 (1973), with Craig v. Boren, 429 U.S. 190,97 S.Ct. 451, 50 L.Ed.2d 397 (1976). In Frontiero, a plurality of the Supreme Court indicated, for the first (and what turned out to be the only) time, that "classifications based upon sex, like classifications based upon race, alienage, or national origin are inherently suspect and must therefore be subjected tostrict judicial scrutiny." 411 U.S. at 688, 93 S.Ct. at 1771
(emphasis added). Later, however, in Craig, the Court "signal[led] a retreat" from Frontiero's holding that sex is a suspect classification warranting strict scrutiny and adopted an " 'intermediate' level scrutiny," that " 'classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.' "429 U.S. at 217-18, 97 S.Ct. at 467-68 (Rehnquist, J., dissenting) (emphasis omitted). See also Califano v. Webster,430 U.S. 313, 316-17, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360
(1977).
Sex discrimination was the subject of vigorous public debate by the time of the appellant's first conviction as a 16-year-old on December 21, 1973. On March 22, 1972, the Equal Rights Amendment (declaring that "[e]quality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex") was passed by Congress and submitted to the state legislatures for ratification. See H.J.R. Res. No. 208, 92d Cong., 2d Sess. (1972).
Also by the time of the appellant's first conviction, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), (c), declaring that no employer, labor union, or other organization subject to the provisions of the act shall discriminate on the basis of sex, and the Equal Pay Act of 1963, 29 U.S.C. § 206(d), prohibiting employers from discriminating on the basis of sex, had been the subject of much litigation. See Developments in the Law-EmploymentDiscrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109 (1971); Murphy, Female Wage Discrimination:A Study of the Equal Pay Act 1963-1970, 39 U.Cin.L.Rev. 615 (1970) (cited in Frontiero, 411 U.S. at 687 nn. 19, 20,93 S.Ct. at 1770-71 nn. 19, 20). See generally Developments in theLaw-Equal Protection, 82 Harv.L.Rev. 1065 (1969).
On May 14, 1973, some seven months before the appellant's first conviction, the Supreme Court decided Frontiero. Since that case arose from the federal District Court for the Middle District of Alabama, see Frontiero v. Laird, 341 F. Supp. 201
(M.D.Ala. 1972), it is reasonable to assume that an Alabama attorney would have been particularly attentive to the holding of Frontiero, wherein statutory classifications which were not gender-neutral were declared "inherently suspect" and subject to "strict judicial scrutiny." *Page 46 
By 1973, Title 30, § 21, 1940 Code of Alabama (Recomp. 1958), denying women the right to serve on juries, had long since been struck down on equal protection grounds. See White v. Crook,251 F. Supp. 401, 408 (M.D.Ala. 1966). Although neitherFrontiero nor Crook dealt with discrimination against males on the basis of sex, we think the existence of such decisions and the state of the law generally in the area of equal protection indicate that a reasonably competent Alabama attorney would have, by 1973, recognized sex discrimination as a valid ground of attack on a statute which provided dissimilar treatment for similarly-situated males and females.
We therefore conclude that the performance of counsel who represented the appellant in cases CC-73-28983, CC-74-30138, and CC-74-30732, was deficient. We find that in 1973 and 1974, the representation of a lawyer who allowed a 16- or 17-year-old male to plead guilty to adult felonies without challenging the constitutionality of the statute which denied the accused the opportunity to be treated as a juvenile, "fell below an objective standard of reasonableness." Strickland v.Washington, 466 U.S. at 688, 104 S.Ct. at 2064.
The benefits of being accorded juvenile status are clear. An adjudication of delinquency is not a "conviction." Chambers v.State, 497 So.2d 607, 611 (Ala.Cr.App. 1986); Burttram v. State,448 So.2d 497, 498 (Ala.Cr.App. 1984). In Woodall v. Pettibone,465 F.2d 49 ((4th Cir. 1972), cert. denied, 413 U.S. 922,93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973), the court observed:
 "[T]he general advantages of being accorded juvenile treatment have been well documented. Perhaps the greatest advantage in the long run is that . . . '[n]o adjudication by the judge upon the status of any child shall operate to impose any civil disabilities, nor shall any child be deemed a criminal by reason of such adjudication.' "
465 F.2d at 52 n. 6 (quoting Md. Code, Art. 26 § 61 (1957)) (other citations omitted). Compare Ala. Code 1975, § 12-15-72(a) ("An order of disposition or other [juvenile] adjudication . . . shall not be considered to be a conviction or impose any civil disabilities ordinarily resulting from a conviction of a crime or operate to disqualify the child in any civil service application or appointment.").
Had the appellant's counsel successfully challenged Title 62, § 311, in 1973, the appellant would have received the benefits previously accorded only to 16- and 17-year old females under the statute. "In every equal protection attack upon a statute challenged as under inclusive, the State may satisfy the Constitution's commands either by extending benefits to the previously disfavored class or by denying benefits to both parties (e.g., by repealing the statute as a whole)." Orr v.Orr, 440 U.S. 268, 272, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306
(1979). See also Stanton v. Stanton, 421 U.S. at 17,95 S.Ct. at 1379; Craig v. Boren, 429 U.S. at 210 n. 24, 97 S.Ct. at 463
n. 24; Hall v. McBride, 416 So.2d 986, 99091 (Ala. 1982).
Here, the benefits of the juvenile provisions would have been extended to the previously disfavored class (16- to 18-year-old males) because the alternative (denying the benefits to both males and females in that age group) would have resulted in the jeopardy-barred retrial, as adults, of all females who had previously been adjudicated as juveniles under the statute. SeeEdwards v. State, 591 P.2d 313, 316 (Okla.Cr.App. 1979).
Nevertheless, the question whether the appellant was prejudiced by counsel's deficient performance cannot be answered here. If counsel had successfully challenged Title 62, § 311, and if the statute had been declared unconstitutional at the time, the appellant would have been given the opportunity
to be treated the same as females his age were treated, that is, to be considered a juvenile at ages 16 and 17. The fact that the appellant would have had the same opportunity as females in his age group to be treated as a juvenile and the fact that he would have initially appeared before the juvenile court, does not, however, mean that the appellant would have received three juvenile adjudications. The appellant might have been transferred *Page 47 
to adult criminal court pursuant to Title 62, § 325, which provided, in pertinent part, the following:
 "If at any time, after thorough investigation, or trial of its disciplinary measures, the court or judge thereof is convinced that any delinquent child brought before it under the terms of this subdivision, cannot be made to lead a correct life, and cannot be properly disciplined under the provisions of this subdivision, the court or judge thereof shall have authority to transfer such delinquent child to the jurisdiction of any court in [the] county, having jurisdiction of the offense of which said child was, or is charged, there to be proceeded against according to law [as] if said child . . . were over eighteen years of age."
Thus, while we find that the performance of the appellant's counsel in cases CC-73-28983, CC-74-30138, and CC-74-30732 was deficient, we cannot determine whether counsel's deficient performance prejudiced the appellant because we do not know how a constitutional version of Title 62, § 311, would have been applied to the appellant.
We, therefore, direct the circuit court to conduct a hearing to determine, on the information available to the juvenile court at the time of the challenged convictions, whether the appellant would have remained in the juvenile system or would have been transferred to adult criminal court in cases CC-73-28983, CC-74-30138, and CC-74-30732. The State will have the burden of proving that the appellant would have been transferred for prosecution as an adult, had a transfer hearing been held. Raiford v. State, 296 Md. 289, 297, 462 A.2d 1192,1196 (1983); Edwards v. State, 591 P.2d at 322.
If the circuit court finds that the appellant would have been treated as a juvenile in any of the three cases, then it is evident that counsel's deficient performance did, in fact, prejudice the appellant, and the court shall vacate the conviction or convictions corresponding to the case or cases in which, had the appellant's attorney rendered effective assistance of counsel, the appellant would have been adjudicated as a juvenile.
We have previously observed, supra at 3-4, that the petition in case CC-80-1466 appears to be successive under Rule 20.2(b). However, it is questionable whether the current petition collaterally attacking the rape conviction was successive within the meaning of that rule. Even if, in his two prior collateral attacks on the rape conviction, the appellant had alleged the unconstitutionality of his three underlying
convictions, that allegation would not have entitled him to relief from the sentence imposed on the rape conviction. InLochli v. State, supra, this court held that the validity of underlying prior convictions should be challenged by filing a separate Rule 20 petition attacking each underlying prior conviction. Thus, under the reasoning of Lochli, any allegations relating to the three underlying convictions would not have been cognizable in a proceeding attacking the rape conviction.
More importantly, we find that applying the provisions of Rule 20.2(b) to this case would result in a miscarriage of justice. While Rule 20's procedural bars "should be followed to foreclose frivolous and repetitive allegations, they are not to be construed to procedurally foreclose a petitioner from the remedy which he is due." Blount v. State, 572 So.2d 498, 502
(Ala.Cr.App. 1990).
If the circuit court determines that any of the appellant's convictions would have been treated as juvenile adjudications under a constitutional statute, then the appellant's sentence to life imprisonment without parole in case CC-80-1466, on the basis of one or more invalid convictions, is clearly illegal and unjust. In Ex parte Brannon, 547 So.2d 68 (Ala. 1989), our Supreme Court held that "when a sentence is clearly illegal, or is clearly not authorized by statute, the defendant does not need to object at the trial level in order to preserve that issue for appellate review." The holding in Brannon appears to equate an invalid sentence with a "jurisdictional" defect, cf. Rule 16.2(d), A.R.Crim.P.Temp. ("The lack of subject matter jurisdiction or the failure *Page 48 
of the charge to state an offense may be raised . . . at any time"), which is also an exception to the rules of preclusion set out in Rule 20.2(a).
If the circuit court finds that any of the appellant's prior convictions should now be treated as juvenile adjudications because the appellant was denied the effective assistance of counsel and the equal protection of the law, and if the appellant is not given a new sentencing hearing to remedy the earlier injustice, then the appellant will suffer apresent denial of equal protection. See Raiford v. State,296 Md. at 299, 462 A.2d at 1197; Rutledge v. Sunderland,671 F.2d 377, 382 (10th Cir. 1982).
Therefore, if the circuit court vacates any of the appellant's underlying convictions, then it is further directed to conduct a new sentencing hearing in case CC-80-1466, at which the appellant shall be resentenced without using the vacated convictions to enhance his punishment under the habitual offender provisions of § 13A-5-9.
The action herein directed should be taken in sufficient time to permit the circuit clerk to file the return to remand within 56 days from the release of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur.
[1] Title 62, § 319, provided, in pertinent part, that
 "any criminal court in [Jefferson] county, or any court exercising criminal jurisdiction, before which any male child between the ages. of sixteen and eighteen years of age is brought, charged with the commission of a crime, shall have authority, if such court shall deem it to be in the interest of justice and of the public welfare, to . . . transfer such child, by proper order, to the jurisdiction of [the] juvenile and domestic relations court, to be dealt with as a delinquent child, under the terms of this subdivision; and when so transferred such child shall come under all the terms and conditions of this subdivision, and be so dealt with as other children are dealt with under this section."