The appellant, M.C. Siler, was convicted of the murder of T.J.H., a minor, and sentenced to life in prison. The undisputed evidence was that T.J.H. was last seen alive on June 7, 1995. On June 9, 1995, the body of T.J.H. was found with two gunshot wounds to the head. The body had been dragged approximately three feet from where it had fallen. Near the body was a pool of blood, in which was found a spent bullet cartridge, a clip spring from an automatic weapon, the victim's orange University of Tennessee hat, and a "cartoon arm" pointing toward the body. The gun used in the crime was not found. The only witness to directly tie the appellant to the murder was C.P., a juvenile. C.P. was adjudicated a delinquent because of his presence at the murder of T.J.H.
The pertinent testimony of C.P. was as follows: The appellant asked C.P. to accompany him because the appellant had earlier been "jumped" by someone. During this walk, the two came into contact with T.J.H. and Eric Seymore. The appellant told T.J.H. "I got you now." The appellant raised his shirt, pulled out a gun, and shot T.J.H. Eric Seymore then took the gun from the appellant and began to hit T.J.H. over the head with the weapon. Then Eric Seymore shot T.J.H. The appellant retrieved the gun back from Seymore, pointed the gun at C.P.'s head, and told C.P. that he knew where he lived and that if C.P. told anyone what had happened the appellant would kill him.
The appellant raises four issues on appeal.
 I
The appellant argues that State's witness, C.P., was an accomplice as a matter of law and that his testimony was not sufficiently corroborated to sustain the appellant's conviction.
 " 'Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Doss v. State, 220 Ala. 30, 123 So. 231 (1929). However the question of complicity is usually a question of fact; it becomes a question of law only where the court is clearly convinced by a preponderance of the evidence that the witness could have been indicted and convicted of the same charge of a felony for which the defendant is on trial and that the witness freely participated in the crime. Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the trial court. Pryor v. State, 47 Ala. App. 706, 260 So.2d 614 (1972).
 " ' "The question of law for the court resolves itself into one of undisputed evidence. If this, taken altogether most favorably toward the noncomplicity of the witness, still leaves unchallenged acts which would support a verdict of guilt of the witness, then the court, if requested, must require the State to adduce corroboration." Leonard [v. State], supra, 43 Ala. App. [454], 464, 192 So.2d [461], 469.
 " 'Thus where there is doubt or dispute whether a witness is in fact an accomplice, the question is for the jury and not the trial court. Skumro v. State, 234 Ala. 4, 170 So. 776 (1936). Where there is doubt whether a witness is in fact an accomplice, and the testimony is susceptible to different inferences on that point, that question is for the jury. Sweeney v. State, 25 Ala. App. 220, 143 So. 586 (1932); Horn v. State, 15 Ala. App. 213, 72 So. 768 (1916).' "
Wright v. State, 494 So.2d 726, 738 (Ala.Cr.App. 1985) (quotingJacks v. State, 364 So.2d 397, 403 (Ala.Cr.App.), cert. denied,364 So.2d 406 (Ala. 1978)). If the trial court finds that the evidence is disputed and cannot determine whether or not a witness is an accomplice as a matter of law, then it must submit the issue to the jury. The jury must then determine from the facts if the witness is an accomplice, and if so, look to see if there is enough independent corroborating evidence that tends to connect the defendant with the commission of the crime.
C.P. was adjudicated a delinquent for his involvement in the killing of T.J.H. Although juvenile records are sealed, the State did admit that the underlying charge for *Page 555 
C.P.'s delinquency was the murder of T.J.H. The appellant incorrectly states that the adjudication of C.P. as a delinquent was a plea of guilty to the murder of T.J.H., and, as a matter of law, C.P. is an accomplice. A minor or juvenile can certainly be an accomplice in a crime. Porter v. State,654 So.2d 63 (Ala.Cr.App. 1994). However, an adjudication of delinquency is not the equivalent of a conviction or plea of guilty to a crime. Falkner v. State, 586 So.2d 39 (Ala.Cr.App. 1991). See also, Chambers v. State, 497 So.2d 607 (Ala.Cr.App. 1986). The two are mutually exclusive. "[T]here cannot be an adjudication of delinquency and a conviction of crime for the same act." Kinder v. State, 515 So.2d 55, 69 (Ala.Cr.App. 1986) (quoting George, Gault and the Juvenile Court Revolution
(1968)).
Even if C.P. had pled guilty to participating in the murder of T.J.H., this would not necessarily make C.P. an accomplice as a matter of law. "[A witness]'s testimony that he participated in the crime is not controlling because '[a] "participant" in a crime is not synonymous with an accomplice.'Ex parte Bell, 475 So.2d 609 (Ala. 1985)." Wright, 494 So.2d at 739. " '[W]hen a witness denies willing participation in the crime charged against the defendant, the issue of his being an accomplice presents a question of fact for the jury.' Ex parteBell, supra." Id. C.P. testified that although he was present during the murder of T.J.H., he was not involved in the crime. C.P. testified that he was brought there by the appellant and believed that the appellant and others were going to beat up T.J.H., but he did not know that they were going to kill T.J.H. " 'If a witness admits his participation with the defendant in the crime but seeks by his testimony to explain it and to show his innocent intent, it has been held that a question is presented for the jury.' Annot. 19 A.L.R.2d 1352, 1381 (1951)."Id. at 738.
Even if the appellant was correct that C.P.'s delinquency was the equivalent of a guilty plea to the murder of T.J.H., this would not guarantee a finding that C.P. was an accomplice as a matter of law.
 "Even where a witness has been jointly indicted with the defendant and convicted before the defendant's trial, if the witness denies his participation at the defendant's trial, the issue of whether he was an accomplice is a question of fact for the jury. Yarber v. State, 375 So.2d 1229
(Ala. 1978)."
Id.
The trial court properly held that C.P. was not an accomplice as a matter of law and presented this decision to the jury.
 II
The appellant argues there were two defects in the trial court's charge to the jury.
 A
The appellant submitted the following proposed jury charge to the trial court:
 "The fact that a prosecution witness has been charged and convicted of the same crime as that charged against this defendant, you may consider this as a fact in determining whether that witness is an accomplice or not."
The trial court properly refused this submitted charge. As stated in Part I of this opinion, C.P. was not convicted of the same crime as the appellant. C.P. was adjudicated a juvenile delinquent. The above charge is an inaccurate statement of the facts in this case. The appellant's argument is without merit.
 B
The appellant submitted the following proposed jury charge to the trial court:
 "In determining whether the testimony of an accomplice has been corroborated, you first eliminate the testimony of the accomplice, and upon examination of all other evidence, determine if there is other credible evidence tending to connect the defendant to the murder of T.J.[H]. If there is no other credible evidence tending to connect this defendant to this crime, then you should find the defendant no (sic) guilty."
The appellant admits that the trial court charged the jury on corroborating evidence, but contends that the trial court failed to specifically mention the "subtraction process" as defined in the above submitted charge. *Page 556 
The relevant portion of the trial court's charge to jury follows:
 "When a witness denies willing participation in the crime charged against the defendant, the issue of his being an accomplice is a question of fact to be determined by you, the jury. The mere presence of a witness at the scene of a homicide, without more, is insufficient to show him to have been an accomplice in the crime, and his testimony is admissible as evidence to show how the killing occurred. And the fact that a prosecution witness has been charged with or convicted for the same crime as the one with which the defendant is being tried does not require your conclusion that he is an accomplice to the crime. Only if you find from the evidence that a witness is an accomplice, as such term has been defined, is the corroboration requirement invoked.
 "However, when properly invoked, an accomplice's testimony must be corroborated by other evidence tending to connect the defendant with the commission of the offense. And the rule is that such other evidence be sufficient must be believed by the jury beyond a reasonable doubt. It is not necessary that the corroborative evidence be strong or that it alone be sufficient to warrant [a] finding of the defendant's guilt. The corroborative evidence may be entirely circumstantial. If believed, evidence that the defendant planned, plotted, or threatened to commit the charged crime is sufficient corroboration of the accomplice's testimony."
(emphasis added).
The appellant contends that the trial court needed to specifically charge that the jury must "remove the accomplice's testimony and consider only the other evidence to see if it was tending to connect [the appellant] to the crime."
 " 'When reviewing the propriety of a trial court's jury charge, this Court must consider the charge as a whole, in its totality, without isolating statements, which individually may appear prejudicial, from the context in which they were made.' Johnson v. State, 399 So.2d 859, 865
(Ala.Cr.App. 1979). See also, Peterson v. State, 452 So.2d 1372 (Ala.Cr.App. 1984); Alabama Power Company v. Tatum, 293 Ala. 500, 306 So.2d 251
(1975). As long as combined directions in original and supplemental charges accurately present the controversial point of law, ordinarily no reviewable error exists. United States v. Sanfilippo, 581 F.2d 1152 (5th Cir. 1978)."
Spears v. State, 500 So.2d 96, 99 (Ala.Cr.App. 1986) (emphasis original).
Every statement in the trial court's jury charge is a correct statement of the law. We have searched the case law and have found no ruling by this court or the Alabama Supreme Court that holds that the trial court must specifically use the term "subtraction process" in the court's instructions to the jury. Nor can we find where a trial court must give the specific definition as suggested by the appellant.
Contrary to the appellant's assertions, the above jury charges are clear and unambiguous. The appellant's argument is without merit.
 III
The appellant argues that the trial judge admitted irrelevant and prejudicial evidence. The appellant cites three specific instances and states that "the cumulative effect of this extraneous evidence substantially prejudiced the [appellant] in the eyes of the jury."
 A
State witness, Kent Brantley, testified that 1) he and his younger brother had an altercation with the appellant three years before T.J.H. was murdered; 2) he was dating T.J.H.'s sister at the time of the altercation; and 3) he was a member of the Deuces gang and the appellant was a member of the FOLK gang. The appellant argues that this testimony was irrelevant, prejudicial, and too remote. The State argues that this evidence showed motive on the part of the appellant.
 " ' "Testimony going to show motive, though motive is not an element of the burden of proof resting on the state, is always admissible." . . . Even slight evidence to show a motive for doing the act in a criminal case is not to be excluded, but *Page 557 
should be left to the consideration of the jury.' Kelley [v. State], 409 So.2d [909] at 914 [(Ala.Cr.App. 1981)] (emphasis omitted)."
Giddens v. State, 565 So.2d 1277, 1281 (Ala.Cr.App. 1990). Certainly, whether or not the appellant was in a gang is relevant if the T.J.H.'s murder is shown to be gang-related. T.J.H.'s sister dated a member of a rival gang and this same gang member had an altercation with the appellant.
The appellant's argument that because this altercation took place three years before the T.J.H.'s murder the event is too remote and therefore inadmissible is without merit.
 "This court, in Perkins v. State, 580 So.2d 4[, 7-8] (Ala.Cr.App. 1990), stated the following regarding the concept of remoteness:
 " 'The appellant's prior misconduct was not too remote to be admissible. Cf. Ex parte Cofer, 440 So.2d 1121, 1124 (Ala. 1983) ("a single rape which occurred 10 years prior is too remote to be probative of the issue"). "Remoteness is a relative standard, varying in its application according to the facts of each particular case. Palmer v. State, 401 So.2d 266 (Ala.Crim.App.), cert. denied, 401 So.2d 270 (Ala. 1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463(1982)." Pride v. State, 473 So.2d 576, 578
(Ala.Cr.App. 1984). In Brewer v. State, 440 So.2d 1155 (Ala.Cr.App. 1983), this court held that the passage of seven years precluded the offense from being considered part of the res gestae of the prior offense, and noted that "that degree of remoteness alone does not operate to exclude the prior act, see Cofer v. State, 440 So.2d 1116
(Ala.Cr.App. 1983), and affects its weight rather than its admissibility. See Wharton's Criminal Evidence § 260 at 621 n. 14 (C. Torcia 13th ed. 1972)." 440 So.2d at 1159. Thus, as indicated by the trial court, the seven-year span between the prior bad acts by the appellant and the instant charged offense should be considered by the jury in weighing the evidence, rather than affecting its admissibility.
" '. . . .
 " ' "If the evidence is not so remote as to lose its relevancy, the decision to allow or not allow evidence of collateral crimes or acts as part of the State's case-in-chief rests in the sound discretion of the trial judge. McGhee v. State, 333 So.2d 865 (Ala.Cr.App. 1976); McDonald v. State, 57 Ala. App. 529, 329 So.2d 583 (1975), writ quashed, 295 Ala. 410, 329 So.2d 596 (1976), cert. denied, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976)." Nicks v. State, 521 So.2d 1018, 1026 (Ala.Cr.App. 1987), affirmed, 521 So.2d 1035 (Ala. 1988), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988).' "
Cooley v. State, 686 So.2d 546, 550 (Ala.Cr.App. 1996). The remoteness of the collateral act goes to the weight of the evidence rather than to its admissibility.
 B
State witness, W.M.S., testified as to the appellant's membership in the FOLK gang and various statements made by the appellant. Specifically, W.M.S. testified that the appellant commented on being jumped by a member of the Deuces gang, that he wanted to get "them" back, and that he wanted to "kill
folks and stuff." W.M.S. testified that the appellant wanted to kill someone so that he could move up in the ranks of his gang.
As stated above, the appellant's involvement in gang activity is relevant to the appellant's motive in this case. Further, the appellant's desire to get back at the Deuces and to kill someone is relevant to show the appellant's motive and state of mind. see, Giddens, supra.
W.M.S. also testified that the appellant was beaten up by members of his own gang because he lied to the other gang members. The appellant objected to this testimony and the trial court overruled the objection. The appellant then asked for a limiting instruction, which the trial court agreed to give but never did. However, the appellant did not object after the trial court failed to *Page 558 
give the curative charge during jury instructions.
At the close of its instructions to the jury, the trial court asked both the State and the appellant if there were any objections. The appellant made his objection regarding accomplice testimony and the "subtraction process" charge he had requested. The trial court twice asked if there was "[a]nything else?" The appellant's trial counsel answered "[n]o, sir" on both occasions. Failure to object to the trial court's instruction to the jury before the jury retires to deliberate waives any alleged error for review. Greer v. State,649 So.2d 1288 (Ala.Cr.App. 1993); Turrentine v. State,574 So.2d 1006 (Ala.Cr.App. 1990).
 C
The State introduced several photographs of the scene of the crime and of the body of the victim, including one photograph of the body after it had been moved "to depict the amount of decay." The appellant argues that allowing this photograph into evidence, along with other photographs that were duplications of others, "tended to . . . prejudice and inflame the jury."
 "The appellant in Bankhead [v. State, 585 So.2d 97 (Ala.Cr.App. 1989), remanded on other grounds on rehearing, 585 So.2d 112 (Ala. 1991), on remand, 585 So.2d 133 (Ala.Cr.App. 1991), aff'd. on return to remand, 625 So.2d 1141 (Ala.Cr.App. 1992), rev'd on other grounds, 625 So.2d 1146 (Ala. 1993)], like this appellant, argued that the photographs showed advanced decomposition of the body. Still, we held that the photographs were admissible. Brodka v. State, 53 Ala. App. 125, 298 So.2d 55 (1974), and cases cited therein.
 "We find no reason to hold otherwise in the cause sub judice. The trial judge did not abuse his discretion in admitting the photographs into evidence. The fact that the photographs may have 'inflame[d] the minds of the jurors' did not warrant their exclusion. See Kuenzel [v. State, 577 So.2d 474 (Ala.Cr.App. 1990), affirmed, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991)], quoting Ex parte Siebert, 555 So.2d 780, 783-84 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See also Arthur [v. State], 472 So.2d [650] at 659-60 [(Ala.Cr.App. 1984), rev'd on other grounds, 472 So.2d 665 (Ala. 1985)]."
Smith v. State, 581 So.2d 497, 526 (Ala.Cr.App. 1990), rev'd on other grounds, 581 So.2d 531 (Ala.), on remand, 581 So.2d 536
(Ala.Cr.App. 1991).
The appellant's argument is without merit.
 D
The appellant argues that the introduction of the above evidence, if not individually, then cumulatively is prejudicial to the appellant and requires a reversal of his conviction. The appellant cites Gillespie v. State, 549 So.2d 640 (Ala.Cr.App. 1989), as support for his contention.
Gillespie is clearly distinguishable from this case. InGillespie, the prosecutor repeatedly asked leading questions attempting to show the defendant's membership in the Klu Klux Klan (KKK), when there had been no evidence that the defendant had ever been a member of the KKK. " ' "It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by the evidence. Bezotte v. State, 358 So.2d 521, 525 (Ala.Cr.App. 1978) . . ." ' Allen v. State, 478 So.2d 326, 330 (Ala.Cr.App. 1985) (quoting Alabama Power Co. v. Berry, 222 Ala. 20, 23,130 So. 541, 543 (1930))." Gillespie, 549 So.2d at 644. Further, whether or not the defendant was a member of the KKK was irrelevant to prove or disprove if the defendant was guilty of the charge of sexual miscount.
In this case, there was ample evidence to show that the appellant was a member of a gang, that his encounters were with members of a rival gang, and that the victim's sister was dating a member of a rival gang. As discussed in Part III, Subsections A and B, of this opinion, whether or not the appellant was a member of a gang was relevant to prove motive and state of mind.
Also, in Gillespie, the prosecutor attempted to insinuate that the defendant had committed *Page 559 
other acts of sexual misconduct, when it was "clear that the prosecutor had no evidence with which to prove any other acts of sexual misconduct on the part of Gillespie." Id. In this case, there was evidence that the appellant had had previous encounters with rival gang members and relatives of rival gang members.
In Gillespie, the defendant was prejudiced by the effect of the prosecutor's repeated attempts at introducing inadmissible evidence. In this case, there was no such prejudicial cumulative effect because all of the evidence introduced was properly admitted.
The cumulative effect of the introduction of the above evidence by the State was not prejudicial to the appellant.
 IV
Finally, the appellant argues that the trial court erred "in allowing a locally well-known polygraph examiner [to] testify to conversations with" the appellant. Specifically, the appellant argues that State witness, Jerry Carter, should not have been allowed to take the stand because a member of the jury might possibly know that he had been a polygraph examiner in the area. The appellant argues that if this information was relayed to the other jury members, the jury would assume that the appellant was given a polygraph test and would assume that he had failed the test.
As it turns out, Mr. Carter recognized one of the jurors and stated that he had performed a polygraph examination for this juror or one of the juror's relatives. This happened outside the presence of the jury (and outside the presence of the court[1]) and this juror member was never questioned as to whether or not he remembered Mr. Carter.
The trial court did not allow any questions regarding the use of polygraph tests, either in general or regarding the appellant specifically. A review of the records clearly indicates that the subject of polygraph testing never arose.
The appellant's logic is flawed for two reasons. First, the appellant is asking the trial judge to assume facts not in evidence in ruling that a juror might have knowledge that a witness used to perform polygraph examinations. Second, the appellant is assuming that such knowledge is prejudicial. Assuming the jury knew that Mr. Carter had performed polygraph tests in the past is not inherently prejudicial to the appellant. This second logical flaw is compounded by two further unwarranted assumptions that 1) this witness performed a polygraph examination on the appellant, and 2) the appellant failed the test. Neither of these facts were in evidence and the trial court cannot assume that a jury made such leaps in logic. As the trial court pointed out:
 ". . . The identity of this witness was disclosed. You had a chance on voir dire. You did not go into it. I'm not going to keep a witness off the stand just based on when he may be able to offer as relevant subject matter just because we suppose."
The trial court did not err in allowing State's witness, Jerry Carter, to testify at the appellant's trial.
The judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.
[1] This information was relayed to the trial court by the appellant's attorney who stated that he had a conversation with Mr. Carter sometime before Mr. Carter testified. *Page 826