SHAW, Justice
(concurring specially).
I concur in the main opinion. I write specially to note, the following.
The evidence tends to show that the defendant, Jacquees Maurice Boone, and two of his longtime friends, Richard Freeman and an individual named “Geronimo,” were members of a group called “the 700,” the “700 Group,” the “700 Click,” or the “700 Crew.” The 700 Crew is largely described in the record as a musical group whose members reside on the 700 block of Early Street in. west Montgomery. The State’s witness, Det. C.N. Delaney of the Montgomery Police Department, testified that it was “some kind of gang.” At trial, she indicated:
“The 700 Crew, from just my knowledge as an officer from patrolling that area, from things and activity that I have seen them being involved in, it originally started as a music group. [Freeman], he raps, whatever the case may be. But then when you start feuding with another music group, now you are involved in gang activity. So that’s why I associate, them as a gang.”
Det. Delaney could not state whether every member of the 700.Crew was “a gangster.” Other than Det. Delaney’s testimony that the 700 Crew was “feuding” with “another music group,” there is no evidence in the record indicating that the group was involved in any potential criminal activity.
Testimony at trial also indicated that Boone and Freeman sold drugs. The evidence shows that, at some point, certain members of the victim’s family participated with law enforcement to sell or purchase drugs in “controlled buys.” It appears that charges were brought against Freeman as a result of the victim’s family’s participation with law enforcement in these controlled buys. It is undisputed that the result was animosity between- Freeman and members of the victim’s family. The victim, Alondre Cooley, testified that, before this incident, there had been no problems between him and Boone and Freeman.
On appeal in the Court of Criminal Appeals, Boone argued:
“[A] prosecution witness who had interrogated Boone related a' statement that Boone had made indicating that’he was associated with a click [sic] which the witness suggested was,a gang.
“The suggestion that Boone was in a gang was not relevant and, thus, improper and inadmissible. under Ala. R. Evid. 402. And, even if evidence suggesting that Boone was in a gang had been relevant—and was not—it was ... due to be excluded under Ala. R. Evid. 403.”
*998 As the Court of Criminal Appeals has held:
“ ‘[I]n its modern usage, without qualification, [the word “gang”] denotes—in common intent and understanding-criminal action.’ Lanzetta v. New Jersey, 306 U.S. 451, 456, 59 S.Ct. 618, 620, 83 L.Ed. 888 (1939). We equate the association of a defendant with a ‘gang’ as evidence of a collateral criminal act’that is presumptively prejudicial and that is admissible only when probative and under certain limited exceptions. See Bolden v. State, 595 So.2d 911 (Ala.Cr.App.1991), cert. denied, 595 So.2d 914 (Ala.1992). See Ex parte Dill, 600 So.2d 372, 373 (Ala.1992) (‘gratuitous references, even indirect ones, to past criminal activity have required the reversal of criminal convictions’). See also H. Schwab, ‘Of Gangs and - Guilt,’ 3 Los Angeles Lawyer 13 (1990) (evidence of organizational membership a? proof of crime). ‘[E]ven if the proffered evidence [of pri- or bad acts] fits within an exception to .the general exclusionary rule, its probative value must outweigh its prejudicial effect for the evidence to be admissible.’ Ex parte Smith, 581 So.2d 531, 535 (Ala.1991).”
Thomas v. State, 625 So.2d 1149, 1153 (Ala.Crim.App.1992), rev’d on other grounds, Ex parte Thomas, 625 So.2d 1156, 1156 (Ala.1993).
In analyzing this issue in its unpublished memorandum affirming Boone’s conviction, the Court of Criminal Appeals discussed its prior decision in Griffin v. State, 790 So.2d 267 (Ala.Crim.App.1999), rev’d on other grounds, 790 So.2d 351 (Ala.2000):
“ ‘Griffin relies on Ex parte Thomas, 625 So.2d 1156 (Ala.1993), in which the Alabama Supreme Court stated that allowing the state to comment on any possible gang affiliation is equal to allowing the- state- to introduce evidence of collateral criminal acts.
“ ‘Rule 404(b), Ala. R. Evid., states, in pertinent part:
“ ‘ “Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however,, be admissible for other purposes, such as proof of motive..,.”
“‘(Emphasis added.) This Court hqs previously held that a defendant’s involvement in gang activity may be relevant to prove motive in a particular case. Siler v. State, 705 So.2d 552 (Ala.Crim.App.1997); see also Knotts v. State, 686 So.2d 431, 469 (Ala.Crim.App.1995), aff'd, 686 So.2d 486 (Ala.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1559, 137 L.Ed.2d 706 (1997) (holding that “the appellant’s possible membership in an organization that espouses racial hatred is relevant to a possible motive for’the homicide”).

ti i \ '

“ ‘Moreover, Rule 403, Ala. R. Evid., states:
“ ‘ “Although relevant, evidence may be excluded if its probative value is 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jüry, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”

a i

“In R.D.H. v. State, 775 So.2d 248, 252-53 (Ala.Crim.App.1997), we stated:
“ ‘ “ ‘Evidence of any offense other than that specifically charged is prima facie inadmissible. Nicks v. State, 521 So.2d 1018 (Ala.Crim.App.1987), aff'd, 521 So.2d 1035 *999 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988). However, evidence of collateral crimes or bad acts is admissible as part of the prosecutor’s case if the defendant’s collateral misconduct is relevant to show his guilt other than by suggesting that he is more likely to be guilty of the charged offense because of his past misdeeds. Nicks v. State; Brewer v. State, 440 So.2d 1155 (Ala.Crim.App.1983).

a i a t j

“... All of the exceptions relate to the relevancy of the evidence, which means that evidence of separate and distinct crimes is admissible only when the evidence is relevant to the crime charged. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Nicks v. State. If the evidence is not so remote as to lose its relevancy, the decision to allow or to not allow evidence of collateral crimes or acts as part of the state’s case rests in the sound discretion of the trial court. McGhee v. State, 333 So.2d 865 (Ala.Crim.App.1976).

«< u

“‘ “That being said, we are, however, also mindful of the well-settled principle that even where the prof-féred evidence of collateral bad acts is relevant, its'probative value must not be substantially outweighed by the danger of undue and unfair prejudice for the evidence to be admissible. ... Before the probative value of evidence of: collateral bad acts, may be held to outweigh its potential prejudicial effect, the evidence must be ‘reasonably necessary’ -to the state’s case. Bush [v. State, 695 So.2d 70] at 85 [ (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997) ]; Averette [v. State], 469 So.2d [1371] at 1374 [ (Ala.Crim.App.1985) ].”
(( i >
“Griffin, 790 So.2d at 297-99.”
Evidence indicating that Boone was a member of a gang is inadmissible under Rule 404(b), Ala. R. Evid. However, it can be relevant, as the State argues'here, ..to prove his motive in shooting Cooley. Such evidence is admissible only when it is relevant to .the crime charged and is not so remote as to lose its relevancy. Further, even where it is relevant, .its probative value must not be substantially outweighed by the danger of undue and unfair prejudice. In order for the probative value of the evidence to outweigh its potential prejudicial effect, it must be “reasonably necessary” to the State’s case.
After reviewing the record, I cannot find any evidence of a connection between the 700 Crew and the shooting of Cooley. Although Boone, Freeman, and “Geronimo" were all members of the group, the impetus for the attack—Cooley’s family’s cooperation with the police—was not connected to the group. Specifically, there is no evidence indicating that the 700 Crew engaged in drug sales, and there is no evidence indicating that the Cooley family’s cooperation impacted the 700 Crew as a gang. As the main opinion notes: “It appears that the asserted animosity arose out of a personal dispute between Boone and Cooley’s family, not out of a gang affiliation or a gang dispute.” 228 So.3d at 997. Simply put, there is no evidence indicating that Boone was motivated to retaliate against the Cooleys on behalf of the group.[6] Because of this, there is insuffi *1000 cient evidence to show that Boone’s membership in the 700 Crew was “relevant to the crime charged.” Further, even if it were relevant, this “presumptively prejudicial” evidence was not “reasonably necessary” to the State’s case so that the probative value substantially outweighed the danger of undue and unfair prejudice.
The State contends that the evidence was also “necessary for a full and complete (whole picture) explanation of the underlying motives that precipitated” the shooting. I take this as an argument that the evidence was part of the res gestae, which can be a permissible exception under Rule 404(b). See Doster v. State, 72 So.3d 50, 87-89 (Ala.Crim.App.2010). Again, however, there is no evidence tending to show that Boone’s membership in the 700 Crew, as a gang, explains what occurred in this case. Further, there is nothing suggesting that the evidence was reasonably necessary to the State’s case.
Finally, I note that the circumstances surrounding the shooting were contested and that the identity of the shooter was disputed. Given that certain credibility determinations were for the jury, I cannot conclude that the admission of the evidence indicating that Boone was a member of a gang could be harmless error. See Wiggins v. State, 193 So.3d 765, 795 (Ala.Crim.App.2014) (“The harmless-error rule applies to the admission of Rule 404(b), Ala. R. Evid., evidence.”).
Stuart and Main, JJ., concur.

. There is some testimony by Boone that he was framed for the shooting because, he said, the Cooley family was attempting to get “the rest” of the 700 Crew, but this testimony does *1000 not support the motive theory set forth by the State.