Marcus Presley appeals from the summary dismissal of the petition he filed pursuant to Rule 32, Ala. R.Crim. P., seeking relief from his capital-murder conviction and sentence of death. We reverse in part and remand for further proceedings.
Presley was convicted for murder made capital because it was committed during a robbery or an attempted robbery, § 13A-5-40(a)(2), Ala. Code 1975. On direct appeal, we affirmed the conviction and sentence, Presley v. State,770 So.2d 104 (Ala.Crim.App. 1999), and the Alabama Supreme Court affirmed this Court's judgment, Ex parte Presley,770 So.2d 114 (Ala. 2000). On September 27, 2001, Presley filed a 206-page petition for postconviction relief. Rule 32, Ala. R.Crim. P.[1] The State filed an answer and a motion for partial dismissal, seeking summary dismissal of claims it alleged were precluded or were not pleaded with sufficient specificity, Rule 32.7(d), Ala. R.Crim. P. On December 19, 2001, Presley filed motions for discovery and a motion to proceedex parte on a request for expert assistance and funds to hire experts. The State filed responses opposing Presley's motions. On January 23, 2002, Presley filed replies to the State's responses, arguing that he was entitled to discovery and to proceed ex parte on his request for funds to hire experts.
The record indicates that on January 2, 2002, the trial court granted the State's motion for a partial dismissal of Presley's Rule 32 petition. The trial court stated in the order that Presley would have the opportunity to plead with more specificity those claims that were dismissed on grounds that they had not been pleaded with sufficient specificity. (C. 352-55, 365, 370.) The case action summary indicates that the order was sent to the State but that it was never served on Presley. (C. 10, 12.) On January 4, 2002, the court denied Presley's motions for discovery, but allowed Presley 14 days to file new discovery requests that contained additional details about the information sought and the claims from the Rule 32 petition that supported each discovery request. (C. 509-11.) On that date the court also denied Presley's motion to proceedex parte on his request for expert assistance and funds. The order stated that, if Presley petitioned the court for funds for experts, the request had to be linked to specific allegations in the Rule 32 petition. (C. 512.) These orders were never served on counsel for Presley; in fact, Presley's responses to the State's opposition to his requests for discovery and to proceed ex parte on his requests for funds for experts were filed after the trial court denied his motions.[2] *Page 65 
Even after the court received the (moot) responses to the State's opposition to the request for funds, it did not serve Presley with the orders denying his motions or the order dismissing a majority of the claims in the Rule 32 petition. Obviously, Presley missed the 14-day deadline in which to file any new discovery requests. Because he was not served with the order denying the motion for expert assistance or the order for partial dismissal, he also was unable to avail himself of the opportunity to timely file a new motion for funds for experts that included more specific references to the allegations in his Rule 32 petition or an amended Rule 32 petition.
On November 21, 2002, Presley's attorney wrote to the trial court regarding her recent discovery that neither she[3] nor local counsel had been served with the three orders issued in January 2002. Counsel suggested that the problem could be resolved by the trial court's vacating the January 2, 2002, order granting the State's motion for partial dismissal and the January 4, 2002, orders denying Presley's motions for discovery and to proceed ex parte on the request for funds to hire experts. On December 4, 2002, the State filed a letter opposing Presley's request to vacate the orders. The State argued that Presley had "not checked the status of this case for eleven months" and that he wanted "to act as if this failure to prosecute should have no repercussions." (C. 536.) The State further argued that Presley's failure to "discover this order" dismissing the majority of the claims raised in the petition did not invalidate the court's reasoning in dismissing the claims. (C. 537.) The State conceded that a few penalty-phase ineffective-assistance-of-counsel issues remained and suggested that the court set an evidentiary hearing to resolve those claims. On February 25, 2003, Presley filed an extensive motion to set aside the January orders with which counsel had not been served. (C. 548-60.) The motion provided the details regarding the documents that had been filed and the efforts Presley's counsel had undertaken to gain access to the previously entered orders and to have the case action summary corrected. The motion further alleged that the court's failure to serve counsel with the orders prevented him from responding and constituted a denial of due process.
On April 7, 2003, the trial court denied Presley's motion to vacate the January 2 and January 4, 2002, orders. The court allowed Presley 14 days to file new discovery motions. Finally, the court set the case for an evidentiary hearing to be held on May 19, 2003. (C. 17.) Two days later, the trial court amended the order and set a status conference instead of an evidentiary hearing on May 19, 2003.
In April 2003, Presley filed new motions for discovery and for funds to hire experts. The State responded to the motions and requested that the court deny each of Presley's requests. On May 14, 2003, Presley filed a motion to supplement his Rule 32 petition.[4] Presley noted that the pleading was filed in conformance with the court's January 2, 2002, order dismissing many of the claims and granting Presley the opportunity to amend the petition to plead anew many of the dismissed claims so that they complied with Rule 32.6(b), *Page 66 
Ala. R.Crim. P. Presley requested the court to consider the additional facts alleged in support of the allegations it had previously dismissed and to amend its January 2, 2002, order accordingly. Presley requested, alternatively, that the court grant him a reasonable time to amend his petition with additional facts obtained after the court granted his pending motions for discovery and for expert assistance. On June 9, 2003, the trial court held a status conference. The parties made the court aware that motions for discovery and for expert assistance were pending before it, as were the motions to amend the petition. The State informed the court that it had not filed an answer to Presley's proposed amendment to the petition, and the trial court ordered the response to be filed by June 27, 2003. The court indicated it would not rule on the amended petition until the State responded but wanted to set a date for an evidentiary hearing. (R. 9.) No date was set for a hearing at that time.
On July 16, 2003, the State filed a response to Presley's motion to supplement the petition, denying that the pleading deficiencies had been corrected and requesting the court to deny Presley's request that it reconsider its January 2, 2002, order dismissing many of the claims for relief. (C. 685-701.) On August 4, 2003, Presley filed a reply to the State's response. (C. 702-13.) On October 7, 2003, the trial court denied Presley's motion for discovery, the motion for expert assistance, and the motion to supplement the Rule 32 petition. (C. 716.) The court ordered the State to respond to the "remaining issues" in the Rule 32 petition. Although it had previously conceded that an evidentiary hearing was due to be held, the State, on December 23, 2003, filed a motion to dismiss the remaining claims, all of which alleged ineffective assistance of counsel at the penalty phase of the trial. (C. 721-36.) The State argued in its motion that a majority of the claims were without merit and that others failed to meet the specificity requirements of Rule 32.6(b), Ala. R.Crim. P. On February 10, 2004, Presley filed a response to the State's motion to dismiss. (C. 758-99.) On January 12, 2004, the trial court issued an order dismissing the remaining allegations of the petition. Presley now appeals from the trial court's summary dismissal of his Rule 32 petition.
Although Presley raises several issues in this Court, we need address only one issue at this time. Presley argues that he was denied due process as a result of the trial court's failure to serve him with three significant orders in January 2002, including the order dismissing most of the claims raised in the Rule 32 petition and allowing him 14 days to amend the petition. We are compelled to agree, and we reverse the trial court's judgment because we find significant violations of Presley's due-process rights.
Rule 34.5, Ala. R.Crim. P., provides, "Upon the entry of any order in a criminal proceeding made in response to a motion, other than an order made in open court, the clerk shall, without undue delay, furnish all parties a copy thereof by mail or by other appropriate means approved by the judge." Thus, notice of each of the trial court's orders was required by the Alabama Rules of Criminal Procedure. The lack of notice violated Presley's due-process rights.
In Ex parte Fountain, 842 So.2d 726 (Ala. 2001), the Alabama Supreme Court addressed a similar due-process issue that arose when the defendant, Fountain, was not served with the State's brief in the appeal of the summary dismissal of Fountain's Rule 32 petition.[5] The Court commented *Page 67 
on the importance of due-process rights:
 "`Both the Alabama and United States Constitutions protect a citizen of this state from being deprived of life or liberty without "due process of law." The phrase "due process of law," although incapable of a precise definition, in its most basic sense encompasses the observation of that degree of fundamental fairness that is essential to our concept of justice.'
 "Ex parte Frazier, 562 So.2d 560, 565
(Ala. 1990) (citations omitted)."
Ex parte Fountain, 842 So.2d at 730 (emphasis added). The Court further stated:
 "`[P]rocedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interests are about to be affected by governmental action.' Brown's Ferry Waste Disposal Ctr., Inc. v. Trent, 611 So.2d 226, 228 (Ala. 1992).
 "`Procedural due process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901, broadly speaking, contemplates the rudimentary requirements of fair play, which include a fair and open hearing before a legally constituted court or other authority, with notice and the opportunity to present evidence and argument, representation by counsel, if desired, and information as to the claims of the opposing party, with reasonable opportunity to controvert them.'
 "Ex parte Weeks, 611 So.2d [259,] 261 [(Ala. 1992)] (emphasis added)."
Ex parte Fountain, 842 So.2d at 729.
The Court noted that Rule 31, Ala. R.App. P., requires that each party's briefs be served on the other party so that the opposing party can respond to the arguments. Finding that the lack of service of the State's brief denied Fountain's appellate due-process rights, the Court reversed the portion of this Court's judgment affirming the denial of Fountain's Rule 32 petition. The Court also ordered a remand so the State could serve Fountain with a copy of its brief and Fountain could reply to the brief; following the remand, this Court was ordered to "consider anew" those issues not disposed of by the Alabama Supreme Court. Ex parte Fountain, 842 So.2d at 730.
In Ex parte Weeks, 611 So.2d 259 (Ala. 1992), quoted in Ex parte Fountain, above, Weeks was convicted in district court. He appealed the convictions to the circuit court for a trial de novo before a jury. The circuit court dismissed the appeal because Weeks failed to appear. Weeks failed to appear because, despite assurances that he would receive notice of the trial, the circuit clerk had failed to notify Weeks of his trial date. The time for taking an appeal had also passed. Weeks filed a petition for a writ of mandamus with this Court after the circuit court refused to set aside its order dismissing the appeal. This Court denied the petition by order. Weeks then filed a petition for a writ of mandamus with the Alabama Supreme Court, which granted the writ and directed the circuit court to reinstate the appeal. That Court determined that Weeks's due-process rights had been denied when the court, acting through the *Page 68 
clerk, failed to notify him of the trial date when it had undertaken the duty to do so.
The Court stated:
 "Although it is generally held in Alabama that a party is under a duty to follow the status of his case, whether he is represented by counsel or acting pro se, and that, as a general rule, no duty rests upon either the court or the opposing party to advise that party of his scheduled trial date, see the cases collected at 18A Ala. Digest Trial § 9(1) (1956), a party's right to procedural due process is nonetheless violated if he is denied his day in court because the court, acting through its clerk, assumed the duty of notifying that party of his scheduled trial date and then negligently failed to do so."
Ex parte Weeks, 611 So.2d at 262.
The due-process principles discussed and applied in Exparte Fountain and Ex parte Weeks were similarly violated here by the circuit court's failure to serve Presley with copies of the circuit court's order granting the State's motion for partial dismissal and the orders denying his motions for discovery and for funds to retain experts, all of which granted Presley leave to amend. As soon as the court became aware that Presley had not been served with these orders, and that the deadline for amending the discovery motion had passed, the circuit court should have provided Presley with copies of the orders, and the case should have proceeded from there. The court did not do so, however, and as a result, the case took a convoluted path until it was eventually dismissed entirely without benefit of a hearing.[6] The only adequate remedy at this point, as was the case in Ex parte Fountain and Exparte Weeks, is to return the parties to their respective positions at the time the orders were entered in January 2002, and allow the proceedings to continue from that point.
The State contends that any error that may have resulted from the trial court's failure to serve Presley with the order denying his motion for discovery was cured when the trial court granted Presley the option to file a new discovery motion. Presley did, in fact, file a new motion for discovery. Presley contends that the opportunity to file the new motion did not cure the error because, when the new motion for discovery was filed, nearly all of the claims in the Rule 32 petition had already been dismissed. As the, State argued in its response opposing the discovery request, Presley was not entitled to discovery on any claims that had been dismissed. (C. 641-42.) Therefore, the court's error in failing to serve Presley with the order denying discovery was not cured. Only returning Presley to the position he was in when the error occurred will cure this due-process violation and the other violations that resulted when the court failed to serve Presley with its orders.
Although the trial court dismissed many of the claims in the petition on grounds that they were hot pleaded with specificity, when Presley attempted to amend his petition, the trial court summarily denied the motions to amend and supplement the petition. The trial court's denial of the proposed amendments is a matter of concern, particularly in light of Ex parteRhone, 900 So.2d 455, 458 (Ala. 2004), in which the Alabama Supreme Court repeated the oft-stated principle, "Thus, it is clear that only *Page 69 
grounds such as actual prejudice or undue delay will support a trial court's refusal to allow, or to consider, an amendment to a Rule 32 petition." Given the fact that the only arguable delay in the filing of the proposed amendment was the direct result of the circuit court's failure to serve Presley with the order of partial dismissal and given that no prejudice to the State would appear to result from amendment, we urge the circuit court to consider Ex parte Rhone carefully before ruling on any subsequent amendments offered by Presley.
We note, too, that we are concerned about the trial court's reversal of its order setting an evidentiary hearing, a hearing the State had repeatedly acknowledged was appropriate. Based on our thorough reading of the record of the Rule 32 proceedings and of the trial record, it appears that Presley has raised valid claims of ineffective assistance of counsel at the penalty phase, and that those claims merit further investigation and careful consideration rather than summary dismissal. For example, Presley contends that he is mentally retarded and that trial counsel failed to investigate this fact and present it to the jury and judge as potential mitigation. In a reply to the State's response opposing the motion for expert assistance, Presley included the results of an IQ test performed by the Department of Youth Services which classified him as mentally retarded with a Full Scale IQ score of 60. (C. 657.) If Presley is retarded, not only could that evidence have been considered as nonstatutory mitigation, it would preclude imposition of the death sentence. Atkins v. Virginia, 536 U.S. 304,122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Our review of the record before us suggests that summary dismissal of this claim, without the benefit of expert assistance and discovery, was highly questionable.
Furthermore, Presley has alleged that trial counsel conducted no investigation into his background and upbringing, and that, if he had done so, he would have discovered substantial evidence that should have been presented as mitigation evidence. Presley alleged in detail in his petition that his upbringing had been chaotic, marked by physical and sexual abuse, parental abandonment and drug abuse, and extreme poverty. He was addicted to drugs and alcohol, was diagnosed with mental illnesses, and was once determined to have an IQ of only 60. Presley alleged that, in spite of the available mitigation evidence, counsel conducted no investigation and presented none of the available evidence to the jury or to the judge at sentencing. In fact, our review of the trial record reflects that counsel presented no evidence at the sentencing hearing and that he argued at closing that only one mitigating circumstance applied — that Presley was 16 years old at the time of the crime.[7]
The facts alleged by Presley in his Rule 32 petition are precisely the type that the United States Supreme Court has repeatedly held to be relevant to present for the sentencer's consideration in a case in which the death penalty may be imposed. For example, in Williams v. Taylor,529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Court found that defense counsel rendered deficient performance and that Williams was prejudiced when counsel failed to investigate and present substantial mitigating evidence to the, sentencing jury. The Court determined that counsel failed to uncover evidence of "Williams' nightmarish childhood," which included imprisonment *Page 70 
of his parents for their neglect of Williams and his siblings, evidence indicating that Williams was borderline mentally retarded, and evidence of his positive adjustment to prison.Williams v. Taylor, 529 U.S. at 395, 120 S.Ct. 1495. The Court stated that the "graphic description of Williams' childhood, filled with abuse and privation, or the reality that he was `borderline mentally retarded,' might well have influenced the jury's appraisal of his moral culpability."Williams v. Taylor, 529 U.S. at 398, 120 S.Ct. 1495. In Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527,156 L.Ed.2d 471 (2003), the Supreme Court found deficient performance and prejudice based on counsel's failure to investigate and present evidence of Wiggins's dysfunctional background and his bleak life history. Counsel failed to discover that Wiggins experienced poverty, and substantial physical and sexual abuse, that he had been abandoned by his mother, and that he suffered from diminished mental capacity.Wiggins v. Smith, 539 U.S. at 535, 123 S.Ct. 2527. The Court noted that it had previously referred to "the standards for capital defense work articulated by the American Bar Association (ABA) — standards to which we have long referred as `guides to determining what is reasonable.'"Wiggins v. Smith, 539 U.S. at 524, 123 S.Ct. 2527
(citing Strickland v. Washington, 466 U.S. 668, 688,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Williams v.Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389
(2000)). Noting that the ABA guidelines provide that counsel should attempt to discover "all reasonably available
mitigating evidence," the Court found that counsel's review of only social services records and the presentence investigation report and the failure to pursue additional information was unreasonable. Wiggins v. Smith, 539 U.S. at 524,123 S.Ct. 2527 (quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(C), p. 93 (1989) (emphasis added in Wiggins)). The Court stated, "We further find that had the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." Wiggins v. Smith, 539 U.S. at 536,123 S.Ct. 2527. We find some of the Court's comments summarizing Wiggins's case to be appropriate to Presley's case:
 "Petitioner thus has the kind of troubled history we have declared relevant to assessing a defendant's moral culpability. Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ("`[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse'"); see also Eddings v. Oklahoma, 455 U.S. 104, 112 (1982) (noting that consideration of the offender's life history is a " `part of the process of inflicting the penalty of death"'); Lockett v. Ohio, 438 U.S. 586, 604
(1978) (invalidating Ohio law that did not permit consideration of aspects of a defendant's background).
 "Given both the nature and the extent of the abuse petitioner suffered, we find there to be a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing in an admissible form."
Wiggins v. Smith, 539 U.S. at 535, 123 S.Ct. 2527.
The United States Supreme Court has held clearly and repeatedly that, in a capital-murder case in which the death penalty might be imposed, counsel renders ineffective assistance when counsel fails to conduct the necessary investigation and, as a *Page 71 
result, fails to present mitigating evidence to the sentencer. The United States Court of Appeals for the Eleventh Circuit has reached the same result, e.g., Brownlee v. Haley,306 F.3d 1043 (11th Cir. 2002), as has this Court, Harris v.State, 947 So.2d 1079 (Ala.Crim.App. 2004). We strongly encourage the circuit court on remand to review the relevant caselaw carefully before determining whether to hold an evidentiary hearing and before issuing its final decision in this case.
We are compelled to reverse the cause and remand for further proceedings as a result of the glaring due-process violations that occurred. The remand ordered herein will provide the trial court with the opportunity to fulfill the mandates of Rule 32 and the relevant caselaw.
For all of the foregoing reasons, we reverse the circuit court's final order dismissing Presley's Rule 32 petition and the orders denying the motions for discovery and for expert funds and assistance. We remand the cause to the circuit court for further proceedings. The court is directed to serve Presley with the January 2002 orders and to conduct further proceedings. Upon final disposition of the Rule 32 petition, the court shall file a record of the proceedings on remand. The circuit court shall file the return to remand no later than 120 days after the release of this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.*
McMILLAN, P.J., and SHAW J., concur. BASCHAB, J., concurs in the result, with opinion. WISE, J., concurs in the result.
[1] We note that Presley's petition was not properly verified as required by Rule 32.6(a), Ala. R.Crim. P. However, inSmith v. State, 918 So.2d 141 (Ala.Crim.App. 2005), an opinion released today, we expressly overrule our previous holdings in Kelley v. State, 911 So.2d 1125
(Ala.Crim.App. 2004); Coleman v. State, 911 So.2d 1099
(Ala.Crim.App. 2004); and Thornton v. State,859 So.2d 458 (Ala.Crim.App. 2003), that a circuit court lacks jurisdiction to rule on a Rule 32 petition that has not been properly verified, and we hold that the lack of verification of a Rule 32 petition is not a defect of subject-matter jurisdiction; rather, it is a defect that is waived if not properly objected to The State did not object in this case to the lack of proper verification of Presley's petition; therefore, that issue is deemed to be waived.
[2] It is unclear from the record whether the State received a copy of the January 4 orders. The State has never disputed the fact that Presley was not served with the orders issued by the court. (C. 536-37.)
[3] Presley's lead attorney in this proceeding resides and works in Arizona. (Appellant's brief at p. 13, fn. 9.)
[4] On June 3, 2003. Presley filed an addendum to the motion; the addendum included additional facts and argument regarding Claim VII of the petition, which Presley had inadvertently omitted in his previous supplement to the petition.
[5] In the opinion affirming the trial court's order granting Fountain an out-of-time appeal, this Court did not address whether Fountain had received a copy of the State's brief.
[6] The dismissal is particularly curious because the State initially conceded that Presley was entitled to discovery and a hearing on issues related to ineffective assistance of counsel at the penalty phase of trial, and because the trial court had once set a hearing on those issues.
[7] We note, furthermore, that defense counsel also represented Presley on appeal. Presley's appellate brief raised only two issues; the argument section of the brief was three and one-half pages.
* Note from the reporter of decisions: On April 4, 2006, on return to remand, the Court of Criminal Appeals again remanded the case with instructions, by order. On August 24, 2007, on return to second remand, the Court of Criminal Appeals affirmed, without opinion.