Jimmy R. Ham was convicted for the intentional murder of Murry Ray, sentenced to life imprisonment, and ordered to pay $10,000 in victim's restitution. Nine issues are presented on this appeal from that conviction.
 I
On September 17, 1987, the trial judge denied the defendant's motion for a change of venue after an evidentiary hearing held that same day. The judge entered a written order and stated:
 "Upon hearing the evidence the Court finds that while there was wide spread publicity relating to the charge against the Defendant, there was a total absence of evidence that the Defendant could not receive a fair trial due to that publicity and the effect of that publicity on the community. Several witnesses, called by the Defendant to prove the wide spread publicity, offered opinions that the Defendant could receive a fair trial in Covington County, Alabama; and the Court has examined the publicity as introduced by the Defendant. The Court is not reasonably satisfied that the publicity involved has so saturated the community as to have a probable impact on prospective jurors."
Those findings are supported by the record.
On October 19, 1987, the defendant filed a renewed motion for a change of venue, which was set for hearing on October 22, 1987.
At that time, the trial judge informed defense counsel, "I am not going to give you two bites at the apple on something like that. * * * I am not going to rehear the motion for change of venue which I set and we heard for a full half a day up here on the day that it was set."
Defense counsel responded that "we have a witness that is present to testify here today who will testify that the sentiment against the defendant is exceedingly strong and the defendant cannot receive a fair trial in this county." The judge then sustained the State's objection to a hearing of the renewed motion on the ground that there was no allegation of the existence of any new evidence that was unavailable to the defendant at the original hearing.
There is no abuse of discretion by a trial judge in overruling a renewed motion or denying a request for an evidentiary hearing on a renewed motion where there is not even the allegation in the renewed motion that evidence or information exists which could not have been presented when the original motion was presented. McMullin v. State,442 So.2d 155, 160 (Ala.Cr.App. 1983) (trial judge properly refused to permit defense counsel to re-cross examine subpoenaed witness in hearing on motion for new trial since counsel had some information, knowledge, and witness available at trial);Robinson v. State, 430 So.2d 883, *Page 807 
887 (Ala.Cr.App. 1983) (the question of whether or not to deny without an evidentiary hearing a motion to renew or reopen the change of venue issue is within the sound discretion of the trial judge); Atwell v. State, 354 So.2d 30, 36 (Ala.Cr.App. 1977), cert. denied, Ex parte Atwell, 354 So.2d 39 (Ala. 1978) ("The trial judge is entitled to rely upon the jury determination of the competency of the accused to stand trial . . . absent a change in the mental condition of the accused and absent new or additional facts which would create a reasonable or bona fide doubt of his mental competency.").
 II
On October 19, 1987, the defendant filed a "motion for recusal of presiding judge." He alleged that the trial judge should recuse himself because the defendant had: (1) filed complaints with the Judicial Inquiry Commission against the trial judge; (2) written "articles" for the public press highly critical of the trial judge; and (3) written personal letters to the trial judge criticizing the judge's actions in other cases in which the defendant had been involved. The fourth ground of the motion alleged that the trial judge, prior to his appointment as judge, had filed law suits against the defendant.
This motion was heard on October 22nd, four days before trial. At that hearing, the defendant testified that in 1982 he personally delivered a letter to the trial judge in which the defendant criticized the judge for filing and prosecuting civil litigation against the defendant, informed the judge that he had filed a complaint with the Judicial Inquiry Commission, and enclosed a copy of a letter to the editor which had been printed in The Opp News questioning the judge's credibility.
The trial judge responded to the defendant's motion to recuse by filing the following written order:
 "This cause coming on to be heard on the motion filed by the Defendant requesting the undersigned to recuse himself as trial judge to try a murder indictment pending against the Defendant.
 "The Court says from the outset it has no ill will towards this Defendant; and has no independent recollection of the suit referred to in the letter introduced into evidence wherein the Defendant alleges bias arising from the fact that the undersigned while representing a client filed a suit against the Defendant.
 "The Court does not wish to in any way cast reflections upon the attorneys representing this Defendant, but it does appear that the motion to recuse might be in the nature of 'judge shopping'; since it was filed at a time when the other Circuit Judge of this circuit is not physically able to hear the case; and was filed within five (5) days of the scheduled trial of this case.
 "The undersigned would be less than human if he did not admit that 'poison pen' letters are not very pleasant, but having practiced law in a rural circuit for some twenty-seven (27) years; and having served as Circuit Judge in a rural circuit for some eight and one-half (81/2) years, the undersigned realizes that 'poison pen' letters go with the territory.
 "It has been the experience of the undersigned, since assuming the bench that all 'poison pen' letters, with one exception, have come from what could be reasonably inferred as the same source. The only reaction of the undersigned to the 'poison pen' letter published in The Opp Newspaper, and introduced in this cause, was that it was not up to usual literary standards.
 "While the letter Mr. Ham handed to the undersigned alleged that Ham made a complaint to the Judicial Inquiry Commission, and the undersigned has no reason to doubt this, the undersigned was never caused any inconvenience or embarrassment from any complaint which might have been filed by Mr. Ham.
 "The undersigned has always attempted to be impartial insofar as it was within his ability to do so. After assuming the bench the undersigned has run for re-election twice and has been unopposed each time. Consequently, it would be logical to assume that the majority of the *Page 808 
citizens of this circuit feel that the undersigned has been fair in dealing with litigants.
 "There being no question in the mind of the undersigned that he could try the instant case in as fair a manner as he could try any other case; the undersigned respectfully declines to recuse himself."
Generally, a judge is not disqualified from sitting in a proceeding where one of the parties has previously filed a complaint against the judge with the Judicial Inquiry Commission. See Alabama Judicial Inquiry Commission, Advisory Opinions, 87-292, 84-220, 83-176. A judge's disqualification is not required even where a party to the proceeding has in the past unsuccessfully sued the judge. Advisory Opinions, 83-176, 77-29.
Here, the evidence does not support a finding of any actual bias or prejudice on the part of the trial judge. Considering the totality of circumstances in this case, including the fact that the factual basis for each ground of the defendant's motion to recuse occurred at least five years before his motion was filed, we find no reasonable basis for questioning the judge's impartiality. See Matter of Sheffield, 465 So.2d 350,356-57 (Ala. 1984).
 III
The defendant contends that the trial judge committed reversible error in denying a continuance of his trial.
The defendant was indicted on August 13, 1987. At his arraignment on September 10, 1987, the defendant was represented by the Honorable James M. Prestwood and the Honorable Vreeland G. Johnson. The defendant's trial was set for October 26, 1987. By letter dated October 8, 1987, Mr. Prestwood informed the trial court that he had a previous commitment in federal court for "most of that week," but did not specifically request a continuance.
On the trial date, Mr. Johnson filed a motion to continue based on the absence of co-counsel. Johnson represented to the trial judge that he was not prepared to go forward without the assistance of co-counsel. The trial judge denied the continuance and stated:
 "THE COURT: Mr. Johnson, this case has been twice set to hear motions and no motion to continue was ever presented. You were personally present when I set it and there was no motion to continue to be presented — we had a hearing last Thursday. At that time I asked if there were any further motions to be heard. No motion for continuance was presented. You come here on the morning it was set for trial, and your knowing all the time it was set for trial with a motion for continuance —."
"A motion for a continuance is addressed to the discretion of the court and the court's ruling on it will not be disturbed unless there is an abuse of discretion." Ex parte Saranthus,501 So.2d 1256, 1257 (Ala. 1986). Here, the defendant has failed to establish that he was prejudiced by the absence of counsel or that the trial judge abused his discretion. Jenkinsv. State, 384 So.2d 1135, 1139 (Ala.Cr.App. 1979), cert. denied, Ex parte Jenkins, 384 So.2d 1141 (Ala. 1980); Canada v.State, 421 So.2d 140, 143-44 (Ala.Cr.App. 1982). " 'Ordinarily the fact that an attorney is professionally engaged elsewhere in the trial of a cause does not give an absolute right of continuance, and a denial of the application is generally sustained as an exercise of sound discretion.' " City ofBirmingham v. Goolsby, 227 Ala. 421, 425, 150 So. 322 (1933); followed in Vold v. Hand, 366 So.2d 279 (Ala. 1979).
 IV
Heath Ray, the eleven-year-old son of the victim, was an eyewitness to the shooting. Prior to trial, defense counsel filed a motion to require the district attorney "to produce this witness so that the Defendant may request an interview."
At the hearing on the motion, defense counsel argued that he had "an absolute right" to interview the child despite the fact that the mother did not want her child questioned by the defense. The trial judge stated, "If the mother does not want that *Page 809 
child to be interviewed by you, I'm not going — I don't think I've got the authority to force her to."
We know of no authority and have been cited to none which would have authorized or required the trial judge to order the witness to talk to defense counsel. This is not a situation where a material witness was made unavailable through prosecutorial misconduct. See Self v. State, 420 So.2d 798
(Ala. 1982). "Any defendant has the right to attempt to question any witness prior to trial he so desires in the absence of intimidating influence. However, by the same token, any witness has an attending right to refuse to be so interviewed." Hill v. State, 366 So.2d 296, 312 (Ala.Cr.App. 1978), affirmed, 366 So.2d 318 (Ala. 1979); Veith v. State,48 Ala. App. 688, 696, 267 So.2d 480 (1972). Clearly, "[a] witness may refuse to be interviewed or dictate the circumstances under which he will submit to an interview." United States v. Dryden,423 F.2d 1175, 1177, n. 6 (5th Cir.), cert. denied,398 U.S. 950, 90 S.Ct. 1869, 26 L.Ed.2d 290 (1970).
 V
A shotgun taken from the defendant's residence was properly admitted into evidence over the objection that it was seized in an illegal search.
The victim was killed by a shotgun blast on the evening of April 23, 1987, at a hog barn located on land that the defendant's former wife had exclusive possession of pursuant to a divorce decree. The defendant claimed the shooting was in self-defense.
After the shooting, the defendant returned to his residence. Lawrence Barton had married the defendant's sister. Barton went to the defendant's residence the night of the killing. The sheriff telephoned the defendant and Barton drove the defendant "up to the road" to meet the sheriff and then followed the sheriff, who took the defendant to jail. Apparently, the defendant voluntarily surrendered and no argument or contention has been made to the contrary.
Before the defendant left his house, Barton told him that he "needed to lock the house up because he had a gun collection there." In locking the storage room for the defendant, Barton observed a shotgun.
Barton testified that his wife, the defendant's sister, had a key to the defendant's residence. He stated that "[a]s we went back to get [the defendant] some clothes," he met Sheriff Don Harrell. Barton testified that the following exchange occurred: "[The Sheriff] asked me if I knew where [the defendant's] guns was and I told him I did. And he said would you let me have the Franchi gun; it would keep me from having to stay here all night until I got a search warrant." Barton indicated that he had a conversation with his wife about the gun: "I asked her and she said yes." Barton testified that he went in the defendant's residence, got the shotgun, and gave it to the sheriff.
Even if we assume that Barton was an agent of the sheriff and that the search was unlawful, Ex parte Hilley, 484 So.2d 485,490 (Ala. 1985), the shotgun was still properly admitted into evidence. "Under the inevitable discovery exception to the exclusionary rule, evidence is admissible that otherwise would be excludable if it inevitably would have been discovered by lawful means had the illegal conduct not occurred." UnitedStates v. Hernandez-Cano, 808 F.2d 779, 782 (11th Cir.), cert. denied, 482 U.S. 918, 107 S.Ct. 3194, 96 L.Ed.2d 682 (1987);United States v. Webb, 796 F.2d 60, 62 (5th Cir. 1986), cert. denied, 479 U.S. 1038, 107 S.Ct. 894, 93 L.Ed.2d 846 (1987). See generally, W. LaFave, 4 Search and Seizure § 11.4(a) (2nd ed. 1987).
Here, the sheriff had probable cause to search the defendant's residence, and it appears that he would have obtained a warrant had not the defendant's brother-in-law given him the shotgun.
 VI
The defendant has raised four other issues which we have carefully considered and found to be without merit. The photographs depicting the injuries sustained by the victim were properly admitted into evidence. C. Gamble, McElroy's AlabamaEvidence § 207.01(2) (3d ed. *Page 810 
1977). The trial judge did not abuse his discretion in refusing to declare a mistrial based on the allegation that a member of the victim's family had gone into the same room with the jurors during a recess where the judge polled the jury and each juror indicated that there had been no communication in this regard.Ex parte Weeks, 456 So.2d 404, 407 (Ala. 1984), cert. denied,Weeks v. Alabama, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324
(1985). In his oral charge to the jury on self-defense, the trial judge stated that the "evidence must show that the defendant reasonably believed that he was in imminent danger. That is, a third person would use unlawful physical force upon him" (emphasis added). Although this isolated remark is somewhat confusing, clarity is obtained when it is considered within its proper context. Gosa v. State, 273 Ala. 346, 350,139 So.2d 321 (1961); Willingham v. State, 262 Ala. 550, 553,80 So.2d 280 (1955). On appeal, the defendant objects because the trial judge charged the jury that intent can be inferred from the use of a deadly weapon. See Yates v. Aiken,484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988); Baker v.Montgomery, 811 F.2d 557, 560-61 (11th Cir. 1987). However, no objection was made at trial. Rule 14, Temp.A.R.Cr.P.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.