989 So.2d 1167 (2007)
A.G.
v.
STATE of Alabama.
CR-05-2241.
Court of Criminal Appeals of Alabama.
November 2, 2007.
Rehearing Denied December 14, 2007.
Certiorari Denied February 15, 2008 Alabama Supreme Court 1070446.
*1169 A.G., pro se.
Troy King, atty. gen., and Nancy M. Kirby, asst. atty. gen., for appellee.
SHAW, Judge.
A.G. appeals the circuit court's summary denial of his Rule 32, Ala.R.Crim.P., petition for postconviction relief, in which he attacked his May 2004 conviction for sodomy in the first degree and his resulting sentence of 40 years' imprisonment. This Court affirmed A.G.'s conviction and sentence on appeal in an unpublished memorandum issued on March 19, 2004. See A.G. v. State (No. CR-03-0024), 910 So.2d *1170 836 (Ala.Crim.App.2004) (table). The Alabama Supreme Court denied certiorari review, and this Court issued a certificate of judgment on June 14, 2004.
On June 9, 2005, A.G. filed his Rule 32 petition and an attachment listing his claims. On July 19, 2005, A.G. filed a brief in support of his petition. After receiving a response from the State, the circuit court summarily denied the petition on November 17, 2005. By order dated March 23, 2006, this Court dismissed A.G.'s appeal on the ground that the circuit court had not granted A.G.'s request to proceed in forma pauperis before ruling on A.G.'s petition.[1] In the order, this Court noted that A.G.'s petition "stands as filed and awaits a ruling by the circuit court." On April 3, 2006, A.G. filed an amendment to his petition. In the petition and the amendment thereto, A.G. raised numerous claims, including several allegations of ineffective assistance of counsel. After receiving an amended response from the State, and a reply to that response from A.G., the circuit court summarily denied A.G.'s petition, as amended, on July 24, 2006, on the ground that all of his claims were meritless.
On appeal, A.G. contends that the circuit court erred in summarily denying his petition without affording him an evidentiary hearing. For the reasons stated below, we conclude that summary denial of A.G.'s petition under Rule 32.7(d), Ala.R.Crim.P., was proper.

I.
A.G. contended in his petition that his trial counsel was ineffective for various reasons. In the attachment to his petition, A.G. listed the following allegations of ineffective assistance of trial counsel, quoted here in their entirety:
(1) "Counsel was ineffective for not requesting that the trial court charge the jury on the lesser included offense of sodomy 1st";
(2) "Counsel was ineffective for not objecting to an indictment that was void or defective";
(3) "Counsel was ineffective for not cross examin[ing] [the victim], the State's star witness, thereby denying petitioner the right to cross examine and confront witnesses against him";
(4) "Counsel was ineffective for not filing a motion for a new trial for the State not making out a prima facie case of sodomy 1st";
(5) "Counsel was ineffective for not requesting that the judge instruct the jury on expert testimony";
(6) "Counsel was ineffective for not requesting a psychological evaluation of petitioner";
(7) "Counsel was ineffective for not visiting petitioner or attempting to discuss a defense or charges or mitigating facts and circumstances and never developed a trial strategy";
(8) "Counsel was ineffective for failing to prepare a proper defense";
(9) "[Counsel] [f]ailed to properly place trial court on notice that he was challenging the trustworthiness of witnesses statement";
(10) "Counsel was ineffective for not objecting and preserving trial errors for appellate review and failed to properly raise issues on appeal"; and
(11) "Counsel was ineffective for not forcing the State to allow defense counsel *1171 to challenge the relevancy of Dr. Slattery's statements."
(C. 6-7.) In the brief in support of his petition, A.G. expanded on claims (3) and (5), as set out above, and in his amendment, A.G. again expanded on claim (3), as set out above.
In the amendment to his Rule 32 petition, A.G. raised claims that he had not previously raised, including the following additional allegations of ineffective assistance of trial counsel:
(12) That his counsel was ineffective for requesting funds for an "expert witness" to interview the victim, but then not arranging the interview until six days before the trial began (C. 57);
(13) That his counsel was ineffective for not obtaining and presenting "records" indicating that the victim's maternal grandmother, [B.B.], to whom the victim first disclosed the sodomy, had previously "made the same kind of false allegations against petitioner with petitioner's older daughter" (C. 58);
(14) That his counsel was ineffective for not calling Karl L. Youngblood [a polygraph examiner], [and] T.K. and C.K. [B.B.'s stepsons] to testify on his behalf; and
(15) That his counsel was ineffective for not adequately cross-examining [B.B.] and Lt. Richard Carter.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his counsel's performance was deficient and (2) that that deficient performance actually prejudiced the defense. "To meet the first prong of the test, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel's assistance was reasonable, considering all the circumstances." Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987). "`This court must avoid using "hindsight" to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance.'" Lawhorn v. State, 756 So.2d 971, 979 (Ala.Crim.App. 1999), quoting Hallford v. State, 629 So.2d 6, 9 (Ala.Crim.App. 1992). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. As the United States Supreme Court explained:
"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal *1172 defense attorneys would not defend a particular client in the same way."
Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (citations omitted). To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693, 104 S.Ct. 2052.
Rule 32.3, Ala.R.Crim.P., states that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.6(b), Ala.R.Crim.P., states that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." As this Court noted in Boyd v. State, 913 So.2d 1113 (Ala.Crim. App.2003):
"`Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion `which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitle[s] a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts."
913 So.2d at 1125.
"The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must `identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating `that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."
Hyde v. State, 950 So.2d 344, 356 (Ala. Crim.App.2006). In addition, mere citations to the trial record are not sufficient to satisfy a Rule 32 petitioner's burden of pleading. Although courts may take judicial notice of their own records, see Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App. 1991), neither circuit courts nor appellate courts are required to examine the trial *1173 record to ascertain the basis of a Rule 32 petitioner's claim.
With these principles in mind, we turn to A.G.'s ineffective-assistance-of-trial-counsel claims.

A.
Claims (1), (2), (4), (6), (7), (8), (9), (10), and (11), as set out above, were not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P. Those claims, quoted in their entirety above, were single, conclusory sentences unsupported by any factual basis whatsoever. Therefore, summary denial of these allegations of ineffective assistance of counsel was proper. We note that, although this was not the reason given by the circuit court for denying these claims, we may nevertheless affirm the circuit court's ruling on this ground. See, e.g., McNabb v. State, [Ms. CR-05-0509, August 31, 2007] ___ So.2d ___ (Ala.Crim.App.2007) (holding that this Court may affirm a circuit court's denial of a claim in a Rule 32 petition on the ground that the claim was insufficiently pleaded even though that was not the reason stated by the circuit court for its denial).

B.
In claims (3) and (15), as set out above, A.G. contended that his trial counsel was ineffective for not adequately cross-examining the victim, the victim's maternal grandmother, B.B., and Lt. Richard Carter.
Initially, we note that "[d]ecisions regarding whether and how to conduct cross-examinations and what evidence to introduce are matters of trial strategy and tactics." Rose v. State, 258 Ga.App. 232, 236, 573 S.E.2d 465, 469 (2002). "`"[D]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature."'" Hunt v. State, 940 So.2d 1041, 1065 (Ala.Crim.App.2005), quoting Rosario-Dominguez v. United States, 353 F.Supp.2d 500, 515 (S.D.N.Y.2005), quoting in turn, United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987). "The decision whether to cross-examine a witness is [a] matter of trial strategy." People v. Leeper, 317 Ill.App.3d 475, 483, 740 N.E.2d 32, 39, 251 Ill.Dec. 202, 209 (2000).
With respect to the victim, A.G. alleged that his trial counsel failed to cross-examine the victim at all;[2] that the only evidence against him "was hearsay, in the form of what [the victim] had stated" (C. 18); and that cross-examination of the victim would have revealed that the victim was "lying" and that "she had been coached by [B.B.] to make the false allegations against [him]." (C. 64.) However, A.G. did not allege what questions he believes his counsel should have asked or how those questions would have resulted in the victim's admitting during her testimony that she was lying. In addition, he failed to plead any facts indicating that counsel's decision not to cross-examine the eight-year-old victim was not sound trial strategy. Therefore, A.G. failed to plead sufficient facts with respect to this claim to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P.
With respect to B.B., A.G. alleged that his counsel failed to adequately cross-examine B.B.; that cross-examination of B.B. "would have exposed to the jury the anger and personal hatred, resentment, and ill feelings that [B.B.] had toward *1174 [A.G.]" and "would have revealed that [B.B.] had made at least one prior unsuccessful attempt to have [A.G.] sent to prison." (C. 64.) However, A.G. failed to allege the basis of any "ill feelings" B.B. allegedly had toward him, or any facts surrounding B.B.'s alleged attempt to have him "sent to prison." Thus, A.G. failed to plead sufficient facts indicating that his counsel's performance in cross-examining B.B. was deficient.
With respect to Lt. Richard Carter, A.G. alleged only that "[i]f defense counsel would have cross-examined Lt. Carter the jury would have heard the complete testimony of Lt. Carter rather than only hearing a version of the facts that w[as] favorable to the prosecution." (C. 64-65.) A.G. did not allege, however, what questions he believed his counsel should have asked Lt. Carter or what the "complete testimony" of Lt. Carter would have been. Indeed, A.G. did not even identify who Lt. Carter was or how Lt. Carter was involved in the case. Clearly then, A.G. failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P., with respect to this claim.
Because none of these allegations of ineffective assistance of counsel were sufficiently pleaded, summary denial of them was proper. Moreover, although this was not the reason the circuit court gave for denying these allegations, as noted above, we may nevertheless affirm the circuit court's judgment on this ground.

C.
In claim (5), as set out above, A.G. alleged:
"The whole reason for calling Mr. Slattery as a witness (R at 171) and qualifying him as an expert (R 173) was to obtain expert testimony.
"The jury should have been instructed as to the weight of his testimony. [A.G.] was prejudiced because the State used lay witness (R at 202) to diminish Mr. Slatters [sic] testimony. In fact the State suggested that Ms. Gibson and Dr. Lyles knew more about child behavior because they came in contact with children every day (R at 202).
"Counsel was ineffective for not requesting that the jury be instructed on expert testimony (See Strickland v. Washington).
"The ultimate issue was `is [the victim] telling the truth?'
"Mr. Slatter [sic] cast doubt on that due to expert knowledge to allow his opinion to be considered equal to that of mere lay persons was negligent."
(C. 19.)
A.G. failed to allege what instruction he believed should have been requested by counsel and given by the trial court; although he made a bare allegation that Mr. Slattery was an expert, he failed to identify what kind of expert Mr. Slattery was or what testimony Mr. Slattery provided at trial; and he failed to identify who Ms. Gibson and Dr. Lyles were, what their testimony was, or how their testimony necessitated an instruction on expert testimony. Rather, A.G. merely cited to various page numbers from the transcript of his trial. As noted above, however, mere citations to the record are not sufficient to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P. Because A.G. failed to sufficiently plead this allegation of ineffective assistance of counsel, summary denial was proper. Moreover, although this was not the reason given by the circuit court for its denial, as noted above, this Court may nevertheless affirm on this ground.

D.
In claim (12), as set out above, A.G. alleged that his trial counsel was ineffective *1175 for not using the funds granted by the trial court until six days before trial was set to begin. Specifically, A.G. alleged that in October 2001, six months before his trial, his counsel requested and received funds to hire an expert to interview the victim to evaluate her allegation against him but that counsel did not set up the interview until April 2002, six days before his trial was set to begin. According to A.G., because of the lateness in setting up the interview, the State objected, and the trial court granted the State's objection and "denied the interview between the alleged victim and the defense expert witness." (C. 57.) Trial counsel's actions in not using the funds in a timely manner, A.G. said, prejudiced his defense because, according to A.G., had the expert been permitted to interview the victim, the expert would have discovered that the victim was lying, that she had been coached by a "third party" to make the allegations against him, and that he was innocent of the charge, and the expert could have disputed the testimony of the State's expert witnesses. (C. 58.) This argument is meritless.
The record from A.G.'s direct appeal reflects that on October 24, 2001, A.G.'s counsel filed a motion to allow an expert witness to interview the victim in order to "evaluate the evidence as it relates to the child's statement and how the statement was taken," and a motion for funds to hire that expert. (Record on direct appeal, C. 7-8.) The trial court granted both motions on October 26, 2001. On March 22, 2002, counsel filed a motion for a transport order, requesting that the court order that the victim be transported to the office of Dr. Donna Fleitas on April 23, 2002, for an interview. On March 27, 2002, the State filed an objection to the transport order, arguing that trial counsel had waited six months after receiving the funds for the expert to set up the interview only six days before the next trial term was set to begin, and arguing that a trial court has no authority to order a victim-witness to submit to an interview with defense counsel or to a psychological evaluation. On April 19, 2002, the trial court, on the authority of Ham v. State, 540 So.2d 805 (Ala.Crim. App.1988), issued an order setting aside its previous order granting the defense's request for an independent examination of the victim. The record reflects that A.G.'s trial was then continued twice and ultimately began on May 14, 2003.
In Ham, supra, this Court held that a trial court has no obligation or authority to order a child-witness to submit to an interview by the defense. Subsequently, in Barger v. State, 562 So.2d 650 (Ala.Crim. App.1989), this Court further held that a trial court has no authority to order a child-victim of sexual abuse to submit to a psychological examination at the request of the defense. The trial court's April 19, 2002, order makes clear that it was not the untimeliness of the interview that prompted the court to set aside its previous order granting A.G.'s request to have the victim interviewed and evaluated by a defense expert; rather, based on the State's objection and on Ham and Barger, the court set aside its order because it had no authority to order the victim to submit to such an interview. Clearly then, it was not counsel's actions that resulted in the interview being "denied" as alleged by A.G. in his petition; therefore, counsel was not ineffective in this regard. Because this claim is clearly meritless based on a review of the record, summary denial was proper.

E.
In claim (13), as set out above, A.G. alleged that his trial counsel was ineffective for not obtaining and presenting evidence indicating that the victim's maternal grandmother, B.B., to whom the victim *1176 first disclosed the sodomy, had previously "made the same kind of false allegations against petitioner with petitioner's older daughter." (C. 58.) Specifically, A.G. alleged that in 1994, B.B. made an allegation that he had sexually molested his older daughter, that that allegation was determined to be false, and that no charges had been filed against him. A.G. maintained that he had asked his trial counsel to obtain and present records regarding this previous allegation, but that counsel refused, and that he then "took matters into his own hands" and obtained the records on his own and gave them to trial counsel, but that his counsel refused to introduce them into evidence. (C. 58.) A.G. attached to his amended petition the records he argued should have been admitted into evidence. Those records are medical records that indicate that in 1994, A.G.'s older daughter was taken to the hospital at the request of the Department of Human Resources, which had received an allegation from B.B. that she had been sexually molested. The records reflect that no physical evidence of sexual molestation was found.
After thoroughly reviewing A.G.'s petition, we conclude that he failed to plead sufficient facts with respect to this claim to satisfy the requirements in Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P. Although A.G. made a bare allegation that B.B. had previously made false allegations against him regarding his older daughter, he failed to plead any facts regarding that allegation. For example, A.G. failed to plead any facts regarding exactly what B.B. alleged he did to his older daughter. In addition, the documents A.G. attached to his petition indicate that his older daughter was brought to the hospital at the request of the Department of Human Resources, but other than a bare assertion by A.G. that the allegation was determined to be false, A.G. failed to plead any facts regarding the investigation that was conducted. Moreover, given the nature of the prior accusation against him, admission of the evidence may have been harmful to his defense, not helpful, and A.G. pleaded no facts whatsoever to indicate that counsel's decision not to use the evidence may have been sound trial strategy. "An attorney may reasonably decide to avoid presenting evidence that he believes will do more harm than good." Cade v. State, 629 So.2d 38, 42 (Ala.Crim.App.1993). See also Moore v. State, 659 So.2d 205, 209 (Ala. Crim.App.1994) ("[C]ounsel may reasonably avoid presenting evidence or defenses for a number of sound reasons that lead him to conclude that the evidence or defense may do more harm than good."). Finally, A.G. failed even to allege that he was prejudiced, much less to plead any facts indicating how he was prejudiced by his counsel's not presenting this evidence.
Because this claim was not sufficiently pleaded, summary denial was proper. Moreover, although this was not the reason given by the circuit court for its denial, as noted above, we may nevertheless affirm the circuit court's judgment on this ground.

F.
In claim (14), as set out above, A.G. alleged that his trial counsel was ineffective for not calling Karl L. Youngblood, T.K., and C.K. to testify on his behalf.
With respect to Karl Youngblood, A.G. alleged that Youngblood had administered a polygraph examination to him and that the results of that polygraph revealed that he was innocent of the crime. He maintained that "[a]lthough the polygraph test itself may not have been admissible at trial, Mr. Youngblood's testimony would have been admissible and would have shown the jury that petitioner is innocent." *1177 (C. 60.) However, A.G. failed to allege exactly what Youngblood's testimony would have been or how counsel's decision not to call Youngblood prejudiced his defense. Therefore, A.G. failed to plead sufficient facts to satisfy the pleading requirements in Rule 32.3 and 32.6(b), Ala. R.Crim.P., with respect to this claim. Moreover, we note that it is well settled that evidence derived from a polygraph examination is inadmissible. See Ex parte Hinton, 548 So.2d 562 (Ala.1989). In Alabama "both the results of and the fact that a person did or did not take a polygraph test are generally inadmissible." Bostick v. City of Gadsden, 642 So.2d 469, 471 (Ala.Civ.App.1993), aff'd, 642 So.2d 472 (Ala.1994). If Youngblood had been called to testify on A.G.'s behalf, he could not have mentioned the fact that A.G. took a polygraph or the results of that test. The most Youngblood could have testified to was the conversation he had with A.G. during the polygraph examination, i.e., that A.G. denied committing the crime. See, e.g., Siler v. State, 705 So.2d 552 (Ala.Crim.App.1997) (holding that polygraph examiner's testimony regarding conversation he had with defendant was admissible when there was no mention of a polygraph). However, A.G. testified in his own defense at trial and said that he did not commit the crime, and A.G.'s statement to police, in which he also denied any wrongdoing, was also introduced into evidence at trial. Therefore, the only testimony by Youngblood that may have been admissible would have been merely cumulative of other evidence that had already been presented. Thus, even if this claim were sufficiently pleaded, it is meritless.
With respect to T.K. and C.K., A.G. alleged that T.K. and C.K. were B.B.'s stepsons and that they would have testified that they knew that A.G. did not commit the crime because B.B. and her husband, W.K., had coerced the victim into making the allegation against him in order to obtain custody of the victim; and that when they were growing up W.K. had forced them to have sex with B.B. In addition, A.G. alleged that C.K. would have testified about the 1994 sexual molestation allegation against him relating to his older daughter. Specifically, according to A.G., C.K. would have testified that he was present when B.B. and W.K. attempted to coerce A.G.'s older daughter into making a sexual molestation allegation against him, that A.G.'s daughter refused to make the allegation, and that B.B. then made the allegation herself.
On its face, all this testimony appears to be inadmissible and A.G. failed to allege in his petition any facts indicating how any of this testimony would have been admissible at his trial. Rule 608(a), Ala.R.Evid., allows the credibility of a witness to be attacked through the use of opinion and reputation evidence regarding the witness's character for truthfulness or untruthfulness; however, Rule 608(b), Ala. R.Evid., specifically precludes the use of specific instances of conduct, such as B.B.'s having sex with her stepsons, to attack the credibility of a witness. In addition, hearsay evidence is generally inadmissible, see Rule 802, Ala.R.Evid., unless it falls within one of the exceptions to the hearsay rule, and A.G. failed to allege how the testimony from T.K. and C.K. regarding the alleged coercion by B.B. and W.K. of the victim and A.G.'s older daughter would have been anything other than inadmissible hearsay. Thus, A.G. failed to satisfy the pleading requirements in Rule 32.3 and 32.6(b), Ala. R.Crim.P., with respect to this claim. Moreover, even if this claim were sufficiently pleaded, we note that, during A.G.'s trial, trial counsel attacked B.B.'s credibility by presenting evidence of B.B.'s repeated attempts over the years to obtain custody of A.G.'s children; of B.B.'s unfitness *1178 as a parent and her propensity to lie; and of the hostile relationship between B.B. and A.G. Having reviewed the transcript of A.G.'s trial, we do not believe there is a reasonable probability that any further attempts to discredit B.B. would have altered the outcome of that trial.
Because these allegations of ineffective assistance of counsel were both insufficiently pleaded and meritless, summary denial was proper.

II.
A.G. also contended in the amendment to his petition that his appellate counsel was ineffective for not challenging on appeal trial counsel's effectiveness. However, the record from A.G.'s direct appeal reflects that A.G. was represented by the same counsel at trial and on appeal. "If trial counsel is also serving as appellate counsel, counsel cannot be expected to allege on appeal his own ineffectiveness." Nelson v. State, 649 So.2d 1299, 1300 (Ala. Crim.App.1994). Clearly then, counsel was not ineffective for not challenging his own ineffectiveness on appeal, and summary denial of this allegation of ineffective assistance of counsel was proper.

III.
A.G. contended in his petition, and again in the amendment to his petition, that the trial court lacked jurisdiction to render the judgment or to impose the sentence because, he said, his indictment was void. Specifically, A.G. alleged that the indictment failed to include a mens rea element, that no evidence regarding the mens rea element was presented to the grand jury, and that, thus, the indictment was void. In its initial response to A.G.'s petition, the State argued only that this claim was meritless. However, in its amended response to A.G.'s amended petition, the State pleaded, among other things, that this claim was precluded by Rule 32.2(a)(3) and (5), Ala.R.Crim.P., because it could have been, but was not, raised and addressed at trial and on appeal. We agree. Although couched in jurisdictional terms, this claim is not truly jurisdictional. See, e.g., Ex parte Seymour, 946 So.2d 536, 539 (Ala.2006) (the validity of an indictment "is irrelevant to whether the circuit court had jurisdiction over the subject matter of th[e] case"); State v. Sharp, 893 So.2d 566, 571 (Ala. Crim.App.2003) ("Attacking the sufficiency of the evidence presented to the grand jury is not a legal ground for challenging an indictment."); and McConico v. State, 458 So.2d 743, 747-48 (Ala.Crim.App.1984) ("The question of whether an indictment by the Grand Jury has been found on insufficient testimony must be raised by a proper motion to quash the indictment.... [S]uch motions should be timely filed at the trial level and can not be raised for the first time on appeal.").
We recognize that Rule 32.2(a)(3) and (5) were not the reason given by the circuit court for denying this claim, and we likewise recognize the Alabama Supreme Court's recent opinion in Ex parte Clemons, [Ms. 1041915, May 4, 2007] ___ So.2d ___ (Ala.2007). However, we conclude that Ex parte Clemons is not applicable to this case.
In Ex parte Clemons, Eugene Milton Clemons II filed a Rule 32 petition raising, among other claims, numerous allegations of ineffective assistance of trial counsel. The ineffective-assistance-of-counsel allegations were clearly precluded by Rule 32.2(a)(2) because appellate counsel had raised the issue of trial counsel's effectiveness in a motion for a new trial.[3] Nevertheless, *1179 the State expressly waived any preclusion ground relating to the ineffective-assistance-of-counsel allegations, and the circuit court conducted an evidentiary hearing on the allegations, after which it denied the allegations on their merits. On Clemons's appeal to this Court, the State continued its waiver of any preclusion ground and argued the merits of the ineffective-assistance-of-counsel allegations. However, this Court, applying the long-standing principle that an appellate court may affirm a circuit court's judgment if it is correct for any reason, see, e.g., McNabb v. State, [Ms. CR-05-0509, August 31, 2007] ___ So.2d ___ (Ala.Crim. App.2007), and the cases cited therein, held that Clemons's allegations of ineffective assistance of counsel were precluded by Rule 32.2(a), and affirmed the circuit court's judgment relating to the ineffective-assistance-of-counsel allegations on that ground. See Clemons v. State, [Ms. CR-01-1355, June 24, 2005] ___ So.2d ___, ___ (Ala.Crim.App.2003) (opinion on return to remand).
The Alabama Supreme Court granted certiorari review to determine whether this Court "erred in sua sponte applying a procedural bar to preclude Clemons's ineffective-assistance-of-trial-counsel claims." Ex parte Clemons, ___ So.2d at ___.[4] The Court first held that the preclusion grounds in Rule 32.2(a), although mandatory, are not jurisdictional and, thus, that they can be waived by the State. However, the Court noted that merely because the preclusion grounds in Rule 32.2(a) are not jurisdictional "does not lead to the conclusion that an appellate court can never assert them sua sponte." Ex parte Clemons, ___ So.2d at ___. Rather, the Court held that a waiver of a preclusion ground by the State could be overcome and, thus, an appellate court could sua sponte apply a preclusion ground "in extraordinary circumstances." Ex parte Clemons, ___ So.2d at ___.[5] The Court then reversed this Court's judgment, holding that no "extraordinary circumstances" were present to warrant this Court's sua sponte application of a preclusion ground to Clemons's ineffective-assistance-of-counsel allegations.
The opinion in Ex parte Clemons appears to be grounded in due-process principles. The Court noted in Ex parte Clemons that Rule 32.3 places the burden on the State to plead any ground of preclusion but then places the burden on the petitioner to disprove the existence of any preclusion ground asserted by the State. Thus, for a petitioner to satisfy his burden of disproving a preclusion ground asserted by the State, due process requires that a petitioner be given notice of that preclusion ground.[6] Due process and notice are *1180 not new concepts to Rule 32. In Ex parte Rice, 565 So.2d 606 (Ala.1990), the Alabama Supreme Court held that the State's general assertion that the petitioner's claims were precluded under former Rule 20.2, Ala.R.Crim.P.Temp., now Rule 32.2, without identifying which preclusion grounds applied, was not sufficiently specific to provide the petitioner with "the type of notice necessary to satisfy the requirements of due process." 565 So.2d at 608. In Ex parte MacEwan, 860 So.2d 896 (Ala.2002), the Alabama Supreme Court held that the petitioner, who was represented by counsel, had been denied due process when the State's response, to which was attached an affidavit from trial counsel refuting the petitioner's ineffective-assistance-of-counsel allegations, had not been served on the petitioner's attorney. In Abdeldayem v. State, 988 So.2d 608 (Ala.Crim.App.2007), this Court similarly held that the petitioner, who was represented by counsel, had been denied due process when the State's response, which asserted various preclusion grounds, had not been served on his attorney. And in Presley v. State, 978 So.2d 63 (Ala.Crim. App.2005), this Court held that the petitioner was denied due process when neither he nor his attorney was notified of various orders issued by the circuit court. Now, in Ex parte Clemons, the Supreme Court has held that an appellate court may not sua sponte apply a preclusion ground that has been expressly waived by the State, i.e., a ground the State did not notify the petitioner it was asserting.
This case, however, is fundamentally different than Ex parte Clemons, and the due-process protections that have been recognized in the Rule 32 context are not implicated here. In Ex parte Clemons, the State expressly waived any preclusion ground. In this case, however, the State expressly asserted the preclusion grounds in Rule 32.2(a)(3) and (5). In Ex parte Clemons, because of the State's waiver of the preclusion ground, Clemons had no notice of, nor an opportunity to disprove, the preclusion ground that was ultimately applied by this Court for the first time on appeal. In this case, however, A.G. was provided with notice that the State was asserting Rule 32.2(a)(3) and (5) as preclusion grounds and he had an opportunity to attempt to disprove the existence of those preclusion grounds. Indeed, A.G. filed a reply to the State's response in which he specifically argued that none of his claims, including the indictment claim, should be precluded under any of the provisions in Rule 32.2. Thus, the due-process concerns that were present in Ex parte Clemons are not present in this case, and Ex parte Clemons is not controlling here.
Because due process is not implicated and Ex parte Clemons is not applicable in this case, this Court may apply the well-settled rule that an appellate court may affirm a circuit court's judgment if that judgment is correct for any reason. As the Alabama Supreme Court explained in Liberty National Life Insurance Co. v. University of Alabama Health Services Foundation, P.C., 881 So.2d 1013 (Ala. 2003):
"Nonetheless, this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala. 2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala. 1988). This rule fails in application only where due-process constraints require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense *1181 might, if available for consideration, suffice to affirm a judgment, Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458 (Ala.2002), or where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant's evidence on an element of a claim or defense and therefore has not shifted the burden of producing substantial evidence in support of that element, Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala.2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and Kennedy v. Western Sizzlin Corp., 857 So.2d 71 (Ala.2003))."
881 So.2d at 1020.
Because A.G.'s indictment claim is not jurisdictional and because no due-process concerns are implicated in this case, we conclude that we may affirm the circuit court's denial of this claim on the ground that it is precluded by Rule 32.2(a)(3) and (5), even though that was not the reason stated by the circuit court.

IV.
Finally, A.G. alleged in the amendment to his petition that the trial court lacked jurisdiction to render the judgment or to impose the sentence because, he said, the sodomy statute is unconstitutional. Specifically, A.G. argued that the sodomy statute does not contain a mens rea element. Although couched in jurisdictional terms, this claim is not truly jurisdictional, and in its response to the amended petition, the State pleaded, among other things, that this claim was precluded by Rule 32.2(a)(3) and (5), because it could have been, but was not, raised and addressed at trial and on appeal. For the reasons stated in Part III of this opinion, we agree with the State, and we conclude that we may affirm the circuit court's denial of this claim on the ground that it is precluded by Rule 32.2(a)(3) and (5), even though that was not the reason stated by the circuit court.

V.
Based on the foregoing, summary denial of A.G.'s petition was proper under Rule 32.7(d), and the judgment of the circuit court is affirmed.
AFFIRMED.
McMILLAN and WISE, JJ., concur. BASCHAB, P.J., and WELCH, J., concurs in part and concurs in the result in part, with opinions.
BASCHAB, Presiding Judge, concurring in part and concurring in the result in part.
For the reasons set forth in my special concurrence in Clemons v. State, [Ms. CR-01-1355, November 2, 2007] ___ So.2d ___ (Ala.Crim.App.2007), I respectfully concur in the result as to Parts III and IV of the majority opinion. I concur as to the remainder of the majority opinion.
WELCH, Judge, concurring in part and concurring in the result.
I respectfully concur in the result as to part I of the majority opinion. I concur as to the remainder of the opinion.
NOTES
[1] This Court initially remanded the case for the circuit court to clarify whether it had granted A.G.'s request to proceed in forma pauperis. On return to remand, the circuit court stated that it granted indigency status on February 5, 2006, after it had denied the petition on November 17, 2005.
[2] The transcript of A.G.'s trial reflects that counsel did not, in fact, cross-examine the victim.
[3] Clemons had been convicted when the procedure set out in Ex parte Jackson, 598 So.2d 895 (Ala. 1992), overruled by Ex parte Ingram, 675 So.2d 863 (Ala. 1996), was in effect, and had been represented by different counsel at trial and on appeal.
[4] The Court also granted certiorari review on two other issues that are not relevant to this case.
[5] The Court, relying on the decision by the United States Court of Appeals for the Second Circuit in Rosario v. United States, 164 F.3d 729 (2d Cir.1998), delineated three such "extraordinary circumstances." Those circumstances are not at issue here and, thus, need not be discussed.
[6] We note that the Supreme Court expressly recognized in Ex parte Clemons, ___ So.2d at ___, that Rule 32.7(d) specifically "authorizes sua sponte action by" the circuit court in applying a preclusion ground and that, subsequently, in Ex parte Ward, [Ms. 1051818, June 1, 2007] ___ So.2d ___, ___ (Ala.2007), the Court reaffirmed the long-standing rule that a circuit court "may properly summarily dismiss such a petition without waiting for a response to the petition from the State." Thus, this notice requirement is triggered only when the State files a response to the petition.